FRANK PATALANO *et ux. vs.* ANTONIO SILVEIRA DUARTE *et al.*

JUNE 12, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J.    This is a bill in equity in which the complainants, husband and wife, seek to permanently enjoin the respondents from interfering with the former's free and unobstructed use of a certain alleged right of way as laid out on a plat recorded in the town of East Providence. In particular the complainants pray that the respondents Duarte, also husband and wife, who are the real respondents, be compelled to remove a fence, erected and maintained by them, which obstructs the use of said alleged right of way. The other respondents, officers of the town of East Providence, are nominal respondents, who were brought into the suit as parties because said town had made preparations to set curbing on the westerly side of West avenue in said town across the easterly end of said alleged right of way. The respondents last named entered appearances but filed no answers.

After a hearing in the superior court a justice thereof granted the prayers of the bill. The respondents Duarte thereupon duly prosecuted their appeal to this court.

It appears from the evidence that by a plat described as the "Wilcox Plat", which was approved by the town council of East Providence and recorded on October 4, 1921, the Columbia Realty Company divided into some eighty-three lots a parcel of land in that town lying north of a highway known as Warren avenue. A portion of said land bounded southerly

on said highway. Certain areas designated as streets or avenues, each bearing a name, were delineated on said plat. These streets and avenues so designated connected with highways bordering upon said platted land.

There was also laid out on said plat, approximately 100 feet north of Warren avenue and parallel thereto, a strip of land about 30 feet in width, measuring from north to south, and about 380 feet in length, measuring from east to west. This strip was marked on said plat with the words "Right of Way" and extended westerly from West avenue, a street laid out on said plat, to County street, a highway which bordered said platted land on the west. As delineated on the plat each end of said right of way was closed by a straight line which was a continuation of and part of the line of the street at each of such ends. This is the right of way, so called, the use of which is in dispute in this suit; and it forms the only means of ingress or egress to or from lots numbered 42 to 46, inclusive, on said plat. All the other lots thereon bound on at least one street or highway.

On March 19, 1923 the Columbia Realty Company conveyed to the respondents Duarte, by warranty deed, lots numbered 30 and 31 on said plat. These lots bound southerly on said right of way, so called, and easterly on West avenue. The said respondents immediately built a house and barn on said lots.

On September 15, 1923 the same grantor conveyed, by warranty deed, to the same grantees lots numbered 34 to 38, inclusive, and 41 to 46, inclusive, on said plat, together with the fee to the strip of land over which said right of way is being claimed, which strip was described specifically in said deed by metes and bounds.

On March 28, 1931, by mortgagee's deed, the said respondents Duarte obtained title to lots numbered 32 and 33 on said plat. They thus became owners, with the exception of two lots, of an entire block of lots bounding on three sides on streets and on the fourth on the said strip of land. On this

land they operated a small farm, raising vegetables and producing milk.

The evidence further shows that in 1922 one Piccione made an agreement with the Columbia Realty Company to purchase, on the installment plan, lot numbered 29 on said plat. After the installments were all paid Piccione received, on November 30, 1928, a warranty deed of the lot described by number and plat only. On June 27, 1936 he and his wife conveyed to the complainants, by warranty deed, said lot numbered 29, which was described by reference to the plat, and also as "bounding northeasterly on said right of way."

It appears from the plat that lot numbered 29 bounds southerly on Warren avenue, a main highway; easterly on West avenue; northerly on the said strip of land marked on the plat "Right of Way"; and westerly on land lying between said strip and Warren avenue, but not included on the plat.

Evidence on behalf of the complainants shows that they purchased lot 29 after viewing it and examining the recorded plat in question. At that time there was a fence between said lot and the strip of land marked on the plat "Right of Way"; and there was also a fence across the easterly end of said right of way, so called. The complainants' purpose, which they later carried out, was to set up on said lot a station and pumps for the sale of gasoline and oil. They testified that they believed that the lot was accessible from three sides and, therefore, well adapted for the above purpose. The evidence further shows that they had their dwelling house on premises which were not included on said plat, but which adjoined lot 29 on the west and bounded on Warren avenue and said so-called right of way. After purchasing lot 29 they several times requested the Duartes to remove the fence which the latter were maintaining across the easterly end of said right of way, so called, at the property line on West avenue, but the Duartes declined to do so. Later the town began to set curbing on the westerly side of said avenue in front of the respondents' land, and the present suit was then started.

The complainants contend, in substance, that having bought lot 29 with reference to the recorded plat, from which lots had previously been sold, they, as owners of that lot, which is shown on said plat as bounding northerly on the alleged right of way, are entitled to have the said way open and unobstructed so that they may use it. On the other hand, the Duartes maintain that the so-called right of way was laid out on said plat solely for the benefit of the interior lots numbered 42 to 46, inclusive, lying on the northerly side of said so-called right of way, as the only method of ingress and egress to and from said lots, and that when they acquired title to all the lots bounding on the northerly side of said strip of land marked "Right of Way", they also obtained by deed from the owners of said platted land the title to said so-called right of way, free and clear of any and all easements of passage, there then being no longer any necessity for the existence of such an easement. In addition, the Duartes urge that, in any event, the evidence shows that by exclusive adverse user they had destroyed any easement of way in favor of the complainants over said strip of land, if any such easement ever existed.

We find it unnecessary to consider all the questions briefed and argued by the parties, as we are of the opinion that the point raised by the respondents in relation to their use of the said strip of land is, under the evidence, decisive of the case. It clearly appears, as hereinbefore indicated, that the respondents received by deed on September 15, 1923 the fee of the strip of land marked on the plat "Right of Way". Assuming, without deciding, that said strip was then subject to an easement of passage in favor of the owner of lot 29, we are called upon to determine whether or not the trial justice was correct in deciding substantially that the respondents had not extinguished any such easement by their use of said strip, for more than ten years, in the manner disclosed by the evidence. After a careful consideration of all the evidence we find that the above decision of the trial justice was clearly wrong.

It appears from the evidence that since 1926 the Duartes had maintained a fence, without any openings therein, across the easterly end of the so-called right of way at the line of West avenue. This fence effectually obstructed said right of way and prevented its use for the purpose of passage onto West avenue, even though the western end of said strip of land was open and unfenced on County street. The fact that the respondent Duarte testified that he put up the fence because it looked better in front of his house does not alter the fact that he had thus prevented any use by others of such alleged easement of passage. For whatever purpose the fence may have been erected it resulted in a complete obstruction of the so-called right of way. Further, the respondent Duarte was asked whether or not he had built any other fence on the property and he answered as follows: "Yes. I build a little fence across the yard because the kids go right on top of my land all the time and on top the stuff I raise. I build a little fence here."

The evidence also shows that since the Duartes acquired title in 1923 to the strip of land in issue they had plowed and planted it, raised produce, and pastured cows thereon and had otherwise generally used it for farming purposes. Since that date no one had objected to their use of said strip or had attempted to use it themselves until the complainants brought up the matter some time after they had purchased lot 29. While possibly the evidence may not go to the extent of showing an actual abandonment by the previous owners of lot 29 of any alleged easement of passage over said strip of land, nevertheless the evidence certainly shows an acquiescence by such owners for more than ten years in the acts and conduct of the Duartes in respect to their complete obstruction and exclusive use of said strip of land.

The Duartes' continued use of the land in question since 1923 was plainly entirely inconsistent with its use as a way. Under all the facts and circumstances disclosed by the evidence we are clearly of the opinion that, by their full and uninterrupted use of said strip of land and their obstruction

thereof for more than ten years, they extinguished and de-stroyed any easement of way over said strip in favor of the complainants as present owners of lot 29, assuming that any such easement in favor of the owners of said lot ever existed.

It is well settled that an owner of a servient tenement may, by the nature of his use, for more than the prescriptive period, of premises subject to an easement of passage in favor of a dominant tenement, extinguish and destroy such easement. See *Faulkner* v. *Rocket,* 33 R. I. 152; *Louttit* v. *Alexander,* 44 R. I. 257. Whether such a result has taken place in any given case will depend upon the facts and circumstances appearing therein. We have examined the authorities cited by the complainants as supporting their position on this point and find that they are not applicable. They are chiefly cases which hold, in substance, that no right by adverse possession or prescription can be gained against the public interest in a public highway or a dedicated street. See *Almy* v. *Church,* 18 R. I. 182; *Marwell Const. Co.* v. *Mayor et al.,* 61 R. I. 314.

Such a situation was not shown by the evidence herein. The right of way involved in the instant cause was plainly not laid out on the plat as a road or street, and it is clear that the owners of said plat did not, by their manner of delineating said right of way thereon, and by thereafter recording said plat and selling lots with reference thereto, dedicate the land marked "Right of Way" for a public road or street. The complainants therefore, merely as members of the public, have no right of passage over said strip of land so marked and have no right to have it open and unobstructed. If upon this evidence any right of way in said strip existed as appurtenant to lot 29, said easement was of a private nature.

We find, therefore, that the trial justice was clearly in error in granting the prayers of the complainants' bill. On the facts and circumstances appearing in evidence, in our opinion, the complainants have no easement of passage over the strip of land in question.

The respondents' appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with direction to enter a decree dismissing the bill of complaint.

*Thomas L. Marcaccio,* for complainants.

*Charles Z. Alexander, Robert Brown,* for respondents.