DECISION
This case is before the Court for decision following trial without a jury on plaintiffs' amended complaint to quiet title with respect to certain property over which defendants, by counterclaim, assert a right-of-way based upon facts as hereinafter set forth. Defendants, in addition to counterclaiming, otherwise answered the amended complaint and plaintiffs duly answered defendants' counterclaim.
When sitting without a jury, a Superior Court justice is to find the facts specially and to state separately his or her conclusions of law predicated thereon. (R.C.P. 52).
The Court finds the following facts to have been established by a preponderance of the clear and convincing evidence (Walsh v.Cappuccio, 602 A.2d 927 (R.I. 1992)):
 1. On or about May 11, 1943, James P. and Mary M. McKenna conveyed by warranty deed to Manual and Mary Brazil certain real estate situated on the easterly side of Angell Court in the village of Lippitt in the town of West Warwick. This parcel is the real estate which subsequently was divided and today is owned in part by plaintiffs and in part by defendants all as hereinafter set forth.
 2. Plaintiffs real estate (shown as Lots 93 and 517 on page 10 — being Assessor's Plat 2 — of Joint Exhibit 1A) passed to them in the following manner:
 A. Warranty Deed of Manuel and Mary Brazil to Henry E. and Hazel V. Brazil dated July 11, 1946.
 B. Warranty Deed of Henry E. Brazil and Mary Brazil (an unmarried woman) to Antonio L. and Mary L. Deus dated July 19, 1957.
 The record is silent as to what happened to Hazel V. Brazil and also as to why Mary Brazil is a grantor in this Deed.
 C. Warranty Deed of Antonio L. and Mary L. Deus to Antonio L. Deus, Jr. and Maria dos Anjos Silva Deus dated March 31, 1964.
 D. Warranty Deed of Antonio L. Deus, Jr. and Maria dos Anjos Silva Deus to Joseph and Philomena Farias Lima (Plaintiffs here) dated September 26, 1980.
 Each of the last 4 mentioned deeds, that is to say, the deeds referred to in Paragraphs 2A-D, described or referred to a reservation in the grantor to pass and repass over a strip of land 12 feet in width and 77 1/2 feet in length along the northerly side of the premises from Angell Street.
 3. Defendants' chain of title as to their real estate (shown as Lot 94 on page 10 of Exhibit 1A) is as follows:
 A. Warranty Deed of Mary Brazil (an unmarried woman) to Tome and Madaline Miudo dated April 3, 1964.
 B. Warranty Deed of Tome and Madaline Miudo to Robert D. Cabral and Cynthia L. Hopkins dated August 18, 1978.
 C. Quitclaim Deed of Robert D. Cabral and Cynthia L. Hopkins to Cynthia L. Hopkins dated November 7, 1983.
 D. Quitclaim Deed of Cynthia L. Hopkins to Cynthia L. Hopkins and Russell Gobin (the defendants here) dated December 31, 1986.
 The deed described in 3A above recites that the premises therein described also include a right of way as described in a recorded instrument (Book 38, page 464 — the deed described in 2A above). The deeds referred to in 3B-D each unfathomably recite that the premises therein described is subject to an easement of record.
 4. The evidence shows that the house on defendants' lot is flush with the property line of the southerly side of their parcel and that the northerly side of plaintiffs' lot basically is a driveway. (See, for example, pages 11 and 12 of Joint Exhibit 1A and plaintiffs' Exhibits 2 and 6). The evidence further discloses that defendants' lot has neither a driveway nor provisions for off-street parking.
Other facts of significance to this decision are set out in the following discussion.
Initially in this case the Court was called upon to decided if the easement (right-of-way) originally created in the 1946 warranty deed described in 2A above is an easement in gross (was it personal to the grantor in that deed thus terminating upon their death or perhaps upon their conveyance of the property), or is the easement appurtenant to the real estate for whose benefit it was created? Plaintiffs urge that this Court treat this easement as one in gross because they argue it was for the purpose of ingress and egress to a hen coop and garage (the "auxiliary buildings") located on the real estate conveyed by said deed. The grantors had reserved the right to use the auxiliary buildings without rent for and during the term of their natural lives. The Court finds that there is no natural nexus between the reservation of the right to so use the auxiliary buildings on the one hand and the right-of-way which, by its terms as originally written, was ". . . . for travel with teams or otherwise from their remaining land to said Angell Court". The Court notes that the reservation with respect to the auxiliary buildings (truly an easement in gross) was not even in juxtaposition with the language with respect to travel from grantors remaining land to Angell Court. Thus the Court finds that at issue in this case is an easement appurtenant to defendants' real estate over plaintiffs' real estate. Legally in this context defendants' property is referred to as the "dominant estate" and plaintiffs' property is referred to as the "servient estate".
Plaintiffs next urge the Court that if in law the contested easement is one which is an appurtenant easement then by operation of the facts and by operation of our statutory law (specific reference being made to § 34-7-1 of the General Laws of Rhode Island 1956 (1995 Reenactment) the so-called adverse possession statute) that such easement has terminated.
Our Supreme Court indeed has held that easements may be extinguished by virtue of adverse possession. Patalano v. Duarte,68 R.I. 138, 26 A.2d 69 (1942); Gammons v. Caswell, 447 A.2d 361
(R.I. 1982). Our Supreme Court in interpreting the language of the statute cited above which in pertinent part reads,
 "Where any person or persons, or others from whom . . . they derive their title, . . . shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, . . . for and during that time, claiming the same as . . . their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the . . . persons, their heirs and assigns forever . . . ."
has held that parties claiming by adverse possession may add or tack periods of similar possession by predecessors in title for the purpose of satisfying the 10 year requirement. Toffinder v.Thomas, 119 R.I. 545, 381 A.2d 519 (1977).
Antonio Deus, one of the grantees in the deed referred to in 2C above testified that he owned the property now owned by plaintiffs from March 31, 1964, until he conveyed said property to plaintiffs on or about September 26, 1980, (by virtue of the deed described in 2D above). Thus this witness owned that property (the servient estate) for sixteen years. The record further shows that plaintiffs owned the property from September 26, 1980 to November 1985 (the date of the commencement of the instant suit), and in fact, continued to own that property at the time of trial herein. The evidence which the Court found to be credible showed a continuous, actual, open, notorious, hostile, exclusive possession of the alleged right-of-way by the owners of the servient estate under a claim of right by them. This evidence included the following:
 A. The owners of the servient estate carried out all maintenance and repairs with respect to the right-of-way.
 B. The owners of the servient estate shoveled all snow and ice.
 C. The owners of the servient estate used the right-of-way as their driveway and precluded defendants and those in their chain of title from utilizing the area without the expressed permission of plaintiffs (including their predecessors in title).
 D. The owners of the servient estate prevented access to a side basement door which was designed as a means of entrance and exit to and from the basement of defendants' home from the easement area with the ultimate result that this door (picture in plaintiffs Exhibit 5) was nailed shut by defendants or by their predecessor in title.
 E. The owners of the servient estate prevented members of defendants' family from walking along the way by ordering them off "their property".
 F. The owners of the servient estate threatened to call the police (inferentially to charge trespass) because a former owner of defendants' property rode a motorcycle to the door referred to in D above.
 G. Of particular significance is evidence that defendants and their predecessors in title sought permission (apparently believing such permission to be necessary) from plaintiffs to put a ladder in the right-of-way area when the house located on defendants' property was being painted.
While no one of these facts standing alone or even in combination with one or two of the other facts would, in the opinion of this Court, necessarily suffice to establish plaintiffs' claim, here the totality of the facts, the lack of any apparent assertion of rights by defendant — the failure by defendants to utilize the statutory mechanism set forth in § 34-7-6, (which of course is permissive and not mandatory), to dispute plaintiffs' claim all inexorably lead this Court to the conclusion that plaintiffs have satisfied their burden by showing by a preponderance of the clear and positive evidence that they and their immediate predecessor in title have, for the space of 10 year (or more), been in the uninterrupted quiet, peaceful and actual possession of the right-of-way area claiming the same as their proper, sole and rightful estate in fee simple. The Court further finds that such possession was open, notorious and adverse to the claimed rights of defendants. In reaching these findings the Court is not unmindful of the testimony of John Brown who lives across the street from the premises. He testified to circumstances where defendants' vehicle was viewed by him parked on the right-of-way but, of course, this witness was not in a position to know if this was with the specific consent of plaintiffs.
Predicated upon all the foregoing, this Court finds that as a matter of fact and as a matter of law the right-of-way referred to above has been extinguished.
Counsel for the plaintiff, after notice to counsel to the defendant and an opportunity to be heard with respect to any objections thereto, may present a proposed judgment.