264 A.2d 161.

JOHN L. SPANGLER *et ux. vs.* HERMAN SCHAUS, JR. *et al.*

APRIL 8, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

796

KELLEHER, J. This is a civil action which seeks to affirm and quiet the title to certain real estate and to obtain other incidental relief. All of the defendants filed answers denying the plaintiffs' allegations. Some of the defendants filed counterclaims in which they asked that the plaintiffs be enjoined from interfering with the defendants' use of the disputed property and that they be awarded monetary damages. Trial was held before a justice of the Superior Court

sitting without a jury. The trial justice filed a written decision wherein she denied and dismissed the plaintiffs' complaint and granted that portion of the counterclaims which requested an injunction. A judgment was then entered, and the plaintiffs instituted this appeal.

The property that is the subject of this litigation is a private road located on the island of Jamestown and identified on various recorded documents as Noanett Street. Noanett Street is 45 feet in width and extends from the easterly line of Walcott Avenue, a public highway, easterly for a distance of over 973 feet until it reaches the tidal waters of Narragansett Bay.

The plaintiffs, who are husband and wife, are domiciliaries of Devon, Pennsylvania. John L. Spangler is a retired physician. The Spanglers own a large parcel of Jamestown real estate which consists of a substantial residence together with approximately three and one-half acres of land. This parcel—the Spanglers' summer home—is bounded on the west by Walcott Avenue, on the north by Noanett Street, on the east by Narragansett Bay, and on the south by the so-called Hazard Land and an unidentified private way. The plaintiffs' parcel consists of four lots of land. Their home which looks past a broad expanse of lawn onto the waters of Narragansett Bay is located a considerable distance to the east of Walcott Avenue. Entrance to the residence is made by traveling over a 12-foot-wide macadamized driveway which begins at Walcott Avenue and extends in an easterly direction to a point just beyond the Spanglers' garage and home. This driveway lies within the bounds of Noanett Street.

The defendants are D. Wheeler Sweeney and his wife Helen; Herman Schaus, Jr. and his wife Lucibel; and Emilie T. J. McCarthy and her husband Thomas. Herman Schaus, Jr. and Emilie T. J. McCarthy are brother and sister. Hereafter, where appropriate, whenever we refer to

any of the property owned by the Schaus and McCarthy families, we shall designate it as "Schaus-McCarthy." The defendants are the owners of the three parcels of land which lie between Walcott Avenue and Narragansett Bay. All of defendants' land bounds southerly on Noanett Street. The Sweeneys own a large parcel which is bounded on the west by Walcott Avenue. The other two parcels are the Schaus-McCarthy land. D. Wheeler Sweeney is also a retired physician. He and his wife built their Walcott Avenue home in 1959. The Sweeneys are year-round residents of Jamestown. Two of the defendants have spent nearly every summer since the turn of the century in a home built by their grandmother on the Schaus-McCarthy parcel which lies closest to Narragansett Bay. An addition was built onto the house in 1965, and since that time the Schaus Family has used these premises on a year-round basis. A private way called Russell Road bounds defendants' properties on the north.

Matters between the parties were rather harmonious until one day in August 1966 when Dr. Spangler observed a young man who was, at the behest of Emilie T. J. McCarthy, planting tomatoes on what plaintiff thought was his land. The plaintiff, however, was told that the planting was taking place on the road—not on his land. It was at this point, the Spanglers claim, that they first became aware of the existence of Noanett Street. Sometime later this suit began.

In this suit the Spanglers have alleged that they own the land designated as Noanett Street by virtue of their adverse possession thereof. The plaintiffs also claim that any rights defendants had in and to this way have been extinguished by their failure to use the road. In considering the Spanglers' appeal, it is necessary to determine the rights of the litigants vis-à-vis Noanett Street, and then to review the Spanglers' claim of their adverse use

and defendants' nonuse of the road. We would point out as we begin our review that any deed or plat referred to hereafter has been duly recorded in the town clerk's office in Jamestown.

## Noanett Street

We cannot fault the trial justice's finding that all the parties hereto at the time of the Spanglers' purchase had acquired mutual rights of passage over the entire width of Noanett Street from its beginning at Walcott Avenue to its terminus at the shores of Narragansett Bay.

Our examination of the various deeds and documents which are part of the record discloses that all the parties trace their title to the devisees under the will of James Hamilton Clarke, to wit, Susan C., Elizabeth R. and Fred H. Clarke. Clarke at one time was the owner of all of the real estate which now comprises the properties of the litigants. On September 15, 1899, the Clarke devisees conveyed a lot of land to Nancy L. Johnson, the grandmother of Emilie T. J. McCarthy. What is now the Schaus-McCarthy home was built on this lot. Later, in 1913 and again in 1924, the Clarke family conveyed two additional lots to Sophie J. Schaus, mother of defendants Emilie and Herman. Each one of these deeds described the real estate as being bounded on the south by Noanett Street. Attached to the 1899 and 1913 deeds are plats of Noanett Street. The 1913 conveyance described Noanett Street as a private way.

In August 1954, plaintiffs purchased their four lots from Elizabeth W. Keeler, a widow. The deed describes all four lots as bounding northerly on Noanett Street and also specifically states that it is subject to restrictions, conditions and covenants contained in a prior deed. The Keeler deed describes Noanett Street as a private right-of-way. Elizabeth W. Keeler and her husband, Lawrence, had acquired the lots which make up the Spangler parcel from

the Clarke devisees at various times during the period of 1917 to 1925. The first deed which runs to Lawrence M. Keeler describes the land being conveyed and then goes on to say:

"The portion of beach or shore belonging to the grantors between the north and south lines of said street or way called NoaNett [sic] Street and to the east of the present seawall, across the easterly end of said NoaNett [sic] Street, is to be held by these grantors for the common use of abutters on said NoaNett [sic] Street; and a right is hereby granted to the said grantee, his heirs and assigns in common with the other abutters on said street, to erect, maintain and use a bath-house or bath-houses on said tract of land and use the said land for purposes of sea bathing:

"And it is further understood and agreed that the expense of opening the said Noanett Street for travel by the abutters on the same, as well as the expense of maintenance of the same, shall be jointly borne by the abutters upon said street in proportion to their respective frontage on the said street * * * ."

The Sweeneys purchased their land in 1958 from the executor of the estate of Fred H. Clarke. This deed describes the Sweeney land as being bounded on the south by Noanett Street.

The record shows that the fee in the roadway called Noanett Street remained in the Clarke family. The trial justice found as a fact that Noanett Street never became a public highway. Today, this way does not have the physical appearance of a street. With the exception of the 12-foot-wide driveway already described, this way is neither paved, oiled nor curbed. A portion of the street contains some brush and trees with the bulk of the way—particularly its easterly half—being grass.

It is evident, from our examination of the deeds of the Clarke family and the plats attached to the deeds running to the Schaus-McCarthy ancestors, that the Clarke family

intended that the 45-foot-wide strip between plaintiffs' and defendants' land was to be used for the benefit of the lot owners adjacent thereto and that, because of such conveyances, the adjacent lot owners acquired a right-of-way over the street. The trial court's finding in this regard is based on the well-known principle that, in a conveyance of land, when a street or way is designed as a boundary and the grantor owns the fee in the land represented as the way or street, an easement in such way passes to the grantee by implication of law. *Vallone* v. *Dept. of Public Works,* 97 R. I. 248, 197 A.2d 310; *Abney* v. *Twombly,* 39 R. I. 304, 97 A. 806.

The plaintiffs attempt to minimize defendants' right to use the way because they have failed to pay the cost of opening up the street. We believe that the matter of cost is completely immaterial. Since the Clarke family began to convey land using Noanett Street as a bound, their grantees had the right to travel on and use the land designated as a street. In *Vallone,* an easement was given over an area designated as a "proposed" street. We see no reason why Noanett Street should be treated any differently from the proposed street in *Vallone.* We therefore affirm the trial justice's finding that, at the time the Spanglers began their alleged adverse possession of the private way that adjoined their northerly boundary, they and defendants each held an easement of passage over this area.

## Adverse Possession

In cases involving adverse possession, strict proof is required. *Sherman* v. *Goloskie,* 95 R. I. 457, 188 A.2d 79. Here, the Spanglers had to prove actual, open, notorious, hostile, continuous and exclusive possession of Noanett Street in themselves for the full statutory period of 10 years by the clear and positive proof the law requires. *Chace* v. *Anarumo,* 104 R. I. 48, 241 A.2d 628. "Clear

and positive proof" means clear and convincing evidence. See *Berberian* v. *Dowd,* 104 R. I. 585, 247 A.2d 508.

In developing their theory of adverse possession, plaintiffs maintain that they were completely unaware of the existence of Noanett Street from the time they first looked at their property in the spring of 1954 until a summer's day in late August 1966 when Dr. Spangler and Mrs. McCarthy became embroiled in a controversy of defendants' right to maintain a tomato patch on land which is unquestionably part of the roadway. The Spanglers tried their case, so far as it concerns adverse possession, on the basis that, when they moved into their Jamestown home, they took possession of all of the land up to the southern boundary of defendants' real estate because they were under the misconception that this was where their property ended and defendants' land began. The trial justice, however, categorically rejected plaintiffs' protestations that until August 1966 they were completely unaware of their northern boundary.

The record discloses that on July 7, 1954, the Spanglers executed a purchase and sales agreement whereby they agreed to buy the Keeler parcel for $21,000. This agreement described the property as containing approximately four and one-half acres of land. Three days later, on July 10, 1954, plaintiffs' real estate agent sent a letter to the Spanglers which informed them that she had just visited the town hall and discovered that a check of the town maps and plats showed that the Keeler acreage was three and one-half acres. The agreement was amended to reflect this change. It is interesting to note that the evidence showed Noanett Street to be about one acre in area.

The plaintiffs insist that they never took time to read either the Keeler deed or the mortgage deed when the title closing was held at Newport.

While the Spanglers may have exhibited a rather laissez-

faire attitude about the exact boundaries of their property, they demonstrated a meticulous concern about preserving various other records which relate to their Jamestown estate. During the trial, they introduced cancelled checks for work done during 1954 and a bill for shrubs planted during 1963. The July 1954 sales agreement and realtor's letter, which are exhibits, were part of their files. While Dr. Spangler was adamant that he was not interested in acreage, he conceded that he might have read the mortgage note. He also admitted that, at the time he purchased his Devon home, he had examined the plat which showed the property he was to purchase.

One of the defendants testified that in 1964 she informed Mrs. Spangler about Noanett Street and the beach at its easterly end.

The Spanglers testified that when they first viewed the Keeler property they stood on the porch on the ocean side of the house and inquired of the real estate agent as to what was included in the purchase. The agent, who at trial time was deceased, reportedly said, "Whatever you see before you," and then proceeded to point to the shrubs and trees to the north of the property, to the ocean on the east, to a stone wall on the south and to Walcott Avenue on the west. In refusing to accept plaintiffs' testimony relative to their ignorance of their boundary lines the trial justice pointed out that the northern boundary was some distance from where plaintiffs stood and a portion thereof was covered with trees and shrubs so that a definite boundary line was indistinguishable. These factors, she said, put the Spanglers on notice to make further inquiry as to their northern boundary. The Superior Court in rejecting this phase of plaintiffs' case described the Spanglers as "intelligent" and "articulate" individuals who would not be so casual about such a matter as a property line in this particular area of the

parcel especially since they had not only looked at the Schaus-McCarthy land[1] earlier but because they had also asked the real estate agent about the acreage of the Keeler lots.

The plaintiffs, in seeking to upset the trial justice's finding on their claim of adverse possession, assert that there is nothing in the record which warrants any inference that they had questioned the agent as to the amount of the land involved in their purchase. We have searched the record, and we cannot find any reasonable basis for the trial justice's statement that the agent's letter about the reduced acreage was prompted by a previous inquiry of the Spanglers. While it is conceded that the agent did notify the Spanglers of the reduction on the area they were to buy from Mrs. Keeler, there is, it is true, nothing to show that the July 10, 1954 letter was prompted by the Spanglers. We deem this oversight by the trial justice to be of no great moment.

It is clear from the record that the trial court's disbelief of plaintiffs' apparent nonchalance was not based exclusively on her erroneous belief that an inquiry of the Spanglers prompted the agent's letter. The court pointed to other evidence which led her to reject the Spanglers' testimony relative to their ignorance of the exact boundaries of their property. However, even if we were to assume that plaintiffs were mistaken as to the correct location of their northern boundary line, this fact does not benefit plaintiffs' cause.

Since plaintiffs and defendants all had a right to use Noanett Street, they held such an easement as tenants in common. *Goralski* v. *Kostuski*, 179 Ill. 177, 53 N.E. 720. The law presumes that when the character of the occupation of land is not initially adverse, it continues to be of the same nature in the absence of some conduct indicating

[1]This land was for sale in 1954 and then taken off the market.

a change. *Tefft* v. *Reynolds,* 43 R. I. 538, 113 A. 787. If one cotenant seeks to sever his relationship as a cotenant of the others and render his possession adverse, he must clearly show that his possession is so overt, notorious, and so wholly inconsistent with the other cotenants' rights as to be equivalent to an ouster between a landlord and a tenant. The adverse claimant's action must be such as to put the other cotenants on notice—either actual or constructive—of the denial of their rights. Stronger evidence is required to establish the adverse possession of a cotenant than the adverse possession of a stranger. *City of Providence* v. *Devine,* 58 R. I. 204, 192 A. 212. To sever their relation as cotenants and render their possession adverse, the Spanglers had to show acts of possession which were not only inconsistent with but in exclusion of the continuing rights of the other cotenants. *Sabins* v. *Mc-Allister,* 116 Vt. 302, 76 A.2d 106. The plaintiffs have failed to bring themselves within this rule.

The Spanglers did nothing after they took title in 1954 which would or should have alerted defendants to the fact that their right to use the street was being denied them. The evidence shows that the Keelers had installed a graveled driveway leading to their garage. They had a lawn which took in Noanett Street and went over to the Gardiner land on the south. The lawn extended to some indeterminate point to the east—quite a distance away from the shores of Narragansett Bay. The rest of the land, including the street, was "in hay." The hay was cut periodically during the year. The number of cuttings depended on the amount of rainfall. The plaintiffs undertook a campaign to turn the hayfield into a lawn. They cut the hay shorter and more often than the Keelers. They oiled or macadamized the gravel driveway. The Spanglers planted some shrubs near the flagpole and some boxwood trees near the Schaus-McCarthy property. After the sum-

mer was over, the Spanglers' maintenance man placed a chain over the entrance to the driveway. It was clear that the sole purpose for this action was to prevent Noanett Street from becoming a public highway. At no time did plaintiffs ever do anything that demonstrated that they were claiming the street to the exclusion of their fellow easement holders. At no time did the Spanglers barricade the private way with the express purpose of barring defendants therefrom. It appears that, up until the day of the turmoil in the tomato patch, the parties had for all practical purposes conducted themselves as the Schaus and Keeler families had acted during the years they were neighbors.

Furthermore, defendants presented a wealth of evidence which demonstrates that they and the workmen who maintained the Schaus-McCarthy property had used the street during the time the Spanglers owned the property. This use, at times, entailed coming onto the way from Walcott Avenue and traveling its entire length to the water. The trial court was told that defendants had at no time up until August 1966 experienced any interference in their use of Noanett Street.

## Abandonment

The last question to be considered is whether the trial justice erred in her findings relative to defendants' abandonment of their rights in and to the street. The rule on this subject may be found in *Tichman* v. *Straffin,* 54 R. I. 356, 173 A. 78, where it was held that a right-of-way by grant is not extinguished by mere nonuse, and the fact that the holder of the easement finds another way more convenient to him does not deprive him of his easement which remains for his use and enjoyment whenever he has the occasion to use the right. The question of abandonment of rights-of-way is one of intention and must be determined on the facts of each case. *Charles C. Gardiner*

*Lumber Co.* v. *Graves,* 63 R. I. 345, 8 A.2d 862. Nonuse of a right-of-way for many years is not conclusive evidence of an abandonment. *Sweezy* v. *Vallette,* 37 R. I. 51, 90 A. 1078.

While plaintiffs make much of the fact that all defendants had access to the land by means of Russell Road, the Schaus family told the court that oftentimes winter storms made this street impassable and that they have, on such occasions, used Noanett Street as a means to reach Walcott Avenue. As *Tichman* states, the mere fact that there is an additional way of access available to a grantee of an easement will not bar his use of the right-of-way given him whenever he seeks to exercise it.

The rules of law which we have enumerated relative to plaintiffs' alleged adverse use of Noanett Street and defendants' supposed abandonment of this way invoke an exercise by the trial justice of her fact-finding powers. It is well settled that this court, on appeal, will not disturb such findings unless they are clearly wrong. The plaintiffs acknowledge this to be so, but they claim that the trial court's findings are not entitled to the persuasive weight usually accorded them by this court because of the trial justice's failure to comply with Rule 52(a) of the Rules of Civil Procedure of the Superior Court. This rule provides that, in a jury-waived trial, "* * * the court shall find the facts specially and state separately its conclusions of law thereon * * *." In *Rowell* v. *Kaplan,* 103 R. I. 60, 235 A.2d 91, we stated that this rule does not require discursive statements or extensive analysis of the evidence. The rule is satisfied if the findings are definite and pertinent, if they cover the factual issues which are relevant to the controlling legal questions, and if they dispose of the contested issues. Our study of the trial justice's decision shows that it more than complies with the rule cited by plaintiffs. It contains a detailed recitation of the

evidence adduced by all the parties, a statement of the controlling legal principles, an assessment of the credibility of the parties, and an adoption of the material evidence to the rules of law. Nothing more can be done. The plaintiffs' complaint relative to the decision appears to be motivated by the fact that, on the conflicting evidence presented before her, the trial justice found for defendants rather than for plaintiffs. This disappointment, however, is no ground for reversal.

Our careful examination of the exhibits and transcript discloses that the trial justice's findings in the case at bar are not clearly wrong and will not be disturbed.

The plaintiffs' appeal is denied and dismissed.

*Sheffield & Harvey, W. Ward Harvey,* for plaintiffs. *Attorneys for Defendants*:

*Letts & Quinn, Daniel J. Murray,* for Herman Schaus, Jr. and Lucibel Taylor Schaus.

*William W. Corcoran,* for D. Wheeler Sweeney and Helen O. Sweeney.

*Leo J. Sullivan,* for Emilie T. J. McCarthy and Thomas O. McCarthy.