Elwin T. GAMMONS et al.

v.

Earl W. CASWELL et al.

No. 79–472–Appeal.

Supreme Court of Rhode Island.

June 4, 1982.

**362**

Sheffield & Harvey, W. Ward Harvey, Newport, for plaintiffs.

Eugene A. Liberati, Mark E. Liberati, Providence, for defendants.

OPINION

SHEA, Justice.

This case is before the court on appeal from a judgment quieting title after trial before a justice of the Superior Court sitting without a jury. The judgment provided that the plaintiff, Elwin T. Gammons, acquired title by adverse possession in a parcel of land bordering his own property in Jamestown. The action had been brought pursuant to the provisions of G.L.1956 (1969 Reenactment) chapters 7 and 16 of title 34. We affirm the judgment.

Pursuant to an order of the Superior Court, notice was published directed to seventeen named defendants, including the town of Jamestown, plus all persons claiming through the Conanicut Land Company, the predecessor in title of all of the property in question. Defaults were duly entered against all named parties except the town of Jamestown and Eugene A. and Marie R. Liberati (the defendants). Although the town of Jamestown had entered an appearance in the case through its solicitor, no one appeared at trial to represent the interests of the town.

The record establishes that the land in dispute is delineated on a plat plan identified as "Conanicut Park, Rhode Island, Drawn by John H. Mullin, Topographical Engineer, Newport, R. I., March 1873." This plat map is on file in the office of the town clerk of the town of Jamestown. The plat plan covers an extensive area at the northern end of the island. At the time this plat plan was drawn, all of Conanicut Park was owned by the Conanicut Land Company. It is clear that the company's intention was to develop Conanicut Park into a residential neighborhood. The plat plan reveals a subdivision including more than 2,000 lots, many streets, parks, groves, ponds, and even an area labeled "Steamboat Landing." A portion of the plat plan which is of interest to this case has been reproduced and appended to this opinion.

Most of Conanicut Park remains undeveloped today. Peter Louis Ryan, a registered engineer specializing in surveying, testified

that a great many of the streets shown on the plat plan do not exist, that Conanicut Park is actually a relatively heavily wooded area with considerable brush and briar. He testified that the development of this plat according to the plat plan was halted in the late 1800s because of a contaminated well and an outbreak of typhoid fever among the residents of that time.

The actual area for which title was quieted in the Gammons is located at the southerly boundary of their land on which they maintain a residence. The Gammons' property is shown on the plat plan as bounded on the west by Orient Avenue, on the east by Narragansett Bay, and on the south by what would be an extension of "Winona Street". The northerly boundary is not delineated on the plat plan; however, it is not an issue in the case. The area shown on the plat plan as an extension of "Winona Street" to the water is the area awarded by adverse possession to plaintiffs.[1] This area is roughly forty feet wide and is overgrown with at least seven large trees; these plus some brush and two very large rocks would make it impassable to an automobile. Mr. Ryan, the surveyor, testified that there was no physical evidence or appearance of a street where "Winona Street" was supposed to be. On the southerly side of "Winona Street" there is a granite boundary marker, fixing the northwesterly boundary of property belonging to a Dr. Graham and formerly belonging to the Y.W.C.A. There is also a privet hedge marking the northern boundary between the Graham property and "Winona Street".

The trial justice found that the Gammons had "cleared, cultivated and taken care of the property running southerly from their home all the way to the privet hedge." This care included planting, fertilizing, pruning, and the removing of underbrush.

The appearance was such that, according to the trial justice, one would be led to believe that the granite marker and the privet hedge were not only the northerly boundary of the Graham property but also the southerly boundary of the Gammons' property.

The defendants who participated at trial, Eugene and Marie Liberati, own property on the other side of Orient Avenue. Their property appears on the plat plan as lot nos. 55, 56, and 57. This property has no frontage on the water. Eugene Liberati testified that he believed that he had a right of way over "Winona Street" to the bay based on representations made by his predecessors in title, James H. and Jeanne C. Haymon. He said that he was told by Mr. Haymon that he had a right to use it and that he did in fact use "Winona Street" to get to the water on many occasions.

After reviewing the evidence presented at trial, the trial justice found that the Gammons satisfied the requirements of § 34–7–1 for obtaining title by adverse possession. He found that the Gammons began to take all of the steps necessary to quiet title in "Winona Street" by adverse possession up to the privet hedge commencing some time after they acquired title by a deed from Frederic N. Beede in 1959. He further found that the Gammons had no knowledge of the paper street at the time they purchased their property. In fact they thought that their land went to the privet hedge.

In challenging the action below, defendants raise four issues. They claim that the trial justice erred in denying their motion for a more definite statement and in denying the first and second defenses in their answer. They claim that the trial justice committed reversible error in finding that the Gammons' property was not on the Co-

1. It should be noted that "Winona Street" appears on the plat plan to run on both sides of Orient Avenue. Our reference to "Winona Street" in this opinion is limited to the portion that is shown as between Orient Avenue and Narragansett Bay. Also, the judgment quieting title included a strip of land running the entire breadth of the Gammons' frontage on Narragansett Bay. The defendants had contended that that strip of land along the water appeared on the Conanicut Park plat plan as a path thereby giving them a right of passage on this property as well. There was some evidence at trial that this "paper walk" is presently under water because of erosion. Regardless, our decision in this case applies to that parcel of land as well as to "Winona Street."

nanicut Park plat plan. They challenge whether the Gammons sustained their burden of proving that they had acquired title by adverse possession. Finally, they contend that the trial justice was clearly wrong in determining that plaintiffs' action should not be barred on the ground of laches.

We first consider the trial justice's finding that the Gammons' property was "not included in or a part of the Conanicut Park Plat." This language is included in the judgment entered by the trial justice on July 18, 1979, after he rendered his decision on June 21, 1979. In his bench decision, the trial justice stated:

"I think it is significant, and I so find that it is significant, that the Gammons' property is not property on that recorded plat. Certainly the owner of the Gammons' property has no such right—strike that. I think it is significant that the Gammons' property is not subdivided on the recorded plat."

█ A finding of fact will not be disturbed on appeal unless it is clearly wrong or unless the trial justice has overlooked or misconceived material evidence. *Russo v. Stearns Farms Realty, Inc.*, 117 R.I. 387, 367 A.2d 714 (1977); *Raheb v. Lemenski*, 115 R.I. 576, 350 A.2d 397 (1976). It is clear from the Conanicut Park plat plan that the Gammons' property is not subdivided on the plat. It is also not delineated by number. In fact the only way one can identify the Gammons' property on the plat plan is to refer to various streets and to Narragansett Bay for reference points. There is no way to identify the northerly boundary at all on the plat plan. Also, the description of the property appearing in the Gammons' deed is by reference to lots on the Tax Assessor's Plat and not to the Conanicut Park plat plan. Because of these factors, we cannot disturb the trial justice's finding.

█ We next consider the claim of laches, the denial of the motion for a more definite statement, and the denial of the first and second defenses. The claim that laches should have barred this action is without merit. The defendants contend that there was an unreasonably long delay from the time when the Gammons first became aware that defendants and their predecessors in title were claiming a right to use "Winona Street" in 1969 to the time that this action to quiet title was filed in 1978. However, a valid claim of laches does not arise out of delay alone but out of delay that, unexplained, operates to the prejudice of the other party. *Pukas v. Pukas*, 104 R.I. 542, 247 A.2d 427 (1968). What constitutes the essential prejudice depends upon the circumstances of each particular case. *Arcand v. Haley*, 95 R.I. 357, 187 A.2d 142 (1963). Here, defendants have not pointed to any prejudice resulting from the delay. Consequently, we cannot say that the trial justice was clearly wrong in denying this claim. *Lombardi v. Lombardi*, 90 R.I. 205, 156 A.2d 911 (1959).

The defendants' motion for a more definite statement and their first and second defenses actually involve the same claim. The ground for the motion made pursuant to Rule 12(e) of the Superior Court Rules of Civil Procedure[2] was that the Gammons failed to comply with the provisions contained in § 34–16–1 through § 34–16–15. The first and second defenses also challenge whether the Gammons complied with these provisions. Chapter 16 of title 34 is entitled "Quieting Title," and it requires, among other things, that certain items be included in the complaint (§ 34–16–5) and that notice be provided to all persons who may have adverse claims. (§§ 34–16–10—34–16–12).

Specifically, § 34–16–5(3) provides that the complaint in this type of action should

**2.** Rule 12(e) of Super.R.Civ.P. reads in part: "Motion for More Definite Statement. If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing his responsive pleading. The motion shall point out the defects complained of and the details desired."

contain, to the extent known to the plaintiff, "[t]he names and last known addresses of those asserting, or who may assert, such adverse claims." Further, § 34–16–5(4) provides that the plaintiff should recite "[t]he efforts made to ascertain and determine those claimants, who, or whose names and/or addresses, are unknown to plaintiff." The defendants contend that the Gammons have failed to comply with both of these provisions.

We find that § 34–16–5(3) has been complied with. The plaintiffs have named seventeen defendants, including the town, and have indicated their addresses by listing the town or city in which they reside. With regard to the efforts made to ascertain claimants unknown to plaintiffs, the complaint recites that the issues raised in this action are of potential interest to everyone owning property in Conanicut Park and that this group is so large that it would be impractical to name all of these persons as individual defendants. For this reason, the Gammons asserted that the seventeen named defendants would fairly ensure adequate representation and that they be joined as a class pursuant to Rule 23(a) of Super.R.Civ.P.

Although the Gammons have not indicated the efforts made to ascertain all of the landowners in Conanicut Park in their complaint, we find that under the circumstances of this case they have cured any defect by invoking and proceeding pursuant to Rule 23. Given the fact that the plat plan shows over 2,000 subdivided lots, the number of defendants would be so large that joinder would be impracticable.

■ The defendants have not challenged the propriety of proceeding under Rule 23, but only the failure to comply fully with § 34–16–5. In this regard, G.L.1956 (1969 Reenactment) § 8–6–2, as amended, P.L. 1975, ch. 222, § 1, recites that the rules of procedure for the Superior Court "shall supersede any statutory regulation in conflict therewith." Thus, to the extent that § 34–16–5 seems to require that the plaintiff in an action to quiet title make an effort to name as defendants all persons who may have adverse claims, this requirement is superseded by Rule 23 when the number of defendants is so great as to make it impracticable to bring them all before the court and when one or more named defendants will fairly ensure the adequate representation of all.

■ The second part of the procedural challenge concerns the required notice to defendants. Section 34–16–10 requires that all known defendants residing in the state be served personally. Section 34–16–11 provides for service to nonresident defendants by registered or certified mail and § 34–16–12 requires that service upon all unknown defendants be made by publication of an order of notice. The defendants contend that the Superior Court lacked subject matter jurisdiction because the Gammons failed to notify personally *all* persons having adverse claims. We reject this argument. It is clear that §§ 34–16–10, –11 and –12 do not require personal service upon all persons having adverse claims. The plaintiffs have fully complied with these provisions by personally serving the seventeen named defendants and by publishing an order of notice to all unascertained defendants in the Newport Daily News on March 6 and 13, 1978, as ordered by the court.

■ The remaining points raised on appeal challenge the quieting of title by adverse possession in "Winona Street." Initially, defendants contend that they, as owners of land on the Conanicut Park plat plan, have a right of way over "Winona Street" to gain access to Narragansett Bay which right of way cannot be quieted by adverse possession. In this regard, when a plat plan is recorded with streets delineated thereon, as was the case with Conanicut Park, and lots are sold with reference to that plat, there is an incipient dedication of such streets inuring to the public. To com-

plete such a dedication and to establish the streets appearing on the plat plan as public highways, there must be an acceptance on the part of the public. Such an acceptance may be accomplished by public user or by appropriate action on the part of public authorities. *Parrillo v. Riccitelli*, 84 R.I. 276, 123 A.2d 248 (1956); *Marwell Construction Co. v. Mayor and Board of Aldermen of Providence*, 61 R.I. 314, 200 A. 976 (1938).

In the case before us, the incipient dedication of "Winona Street" by virtue of the recording of the plat plan was never accepted either by the town or by public user. This court, in *Parrillo v. Riccitelli, supra*, a case involving a dispute very similar to this one, reasoned as follows:

"[H]ad the offer to dedicate Bedford street, flowing from a recording of the plat and sales therefrom, been accepted either by a public user or by action on the part of public authorities, complainants' claim of adverse possession would be without merit, since no right or title can be acquired in a public highway by adverse possession. *Knowles v. Knowles*, 25 R.I. 325 [55 A. 755]. However, there is no evidence that there was an acceptance of the incipient dedication in either form, and consequently title to a portion thereof could be obtained by adverse possession." 84 R.I. at 279, 123 A.2d at 249.

■ As in *Parrillo* we hold that the right of way defendants had in "Winona Street" flowing from the recording of the Conanicut Park plat plan is extinguishable by proper proof of adverse possession by the Gammons and their predecessors in title. There is no evidence of a dedication of "Winona Street" or that the public at large has used it as a public highway.

■ The defendants have cited several nineteenth-century cases for the proposition that they have a private right of way over "Winona Street." *Thaxter v. Turner*, 17 R.I. 799, 24 A. 829 (1892); *Chapin v. Brown*, 15 R.I. 579, 10 A. 639 (1887); *Central Land Co. v. City of Providence*, 15 R.I. 246, 2 A.

553 (1886); *Providence Steam-Engine Co. v. Providence and Stonington Steamship Co.*, 12 R.I. 348 (1879); *Clark v. City of Providence*, 10 R.I. 437 (1873). We have reviewed these cases, and although they do contain language indicating that a private right of way exists in those who purchase lots with reference to the plat plan, none of them discuss whether this private right of way is extinguishable by a valid claim of adverse possession. A proper showing of adverse possession extinguishes this private right of way as well. *Mumaw v. Roberson*, 60 So.2d 741 (Fla.1952); *Stozenski v. Borough of Forty Fort, Luzerne County*, 456 Pa. 5, 317 A.2d 602 (1974); *Chenowth Bros. v. Magnolia Petroleum Co.*, 129 S.W.2d 446 (Tex.Civ.App.1939).

■ We next consider the trial justice's finding that the Gammons satisfied the requirements for quieting title by adverse possession. In cases involving adverse possession, strict proof is required as the claimant must show that he has acquired title by clear and convincing evidence. *Chace v. Anarumo*, 104 R.I. 48, 241 A.2d 628 (1968); *Finocchiaro v. Francescone*, 97 R.I. 371, 198 A.2d 37 (1964). As indicated previously, the findings of fact of a trial justice sitting without a jury will be given great weight and will not be disturbed on appeal unless it can be shown that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence. This policy has specifically been applied to cases involving claims of title through adverse possession. *Taffinder v. Thomas*, 119 R.I. 545, 381 A.2d 519 (1977); *Chace v. Anarumo, supra; Sherman v. Goloskie*, 95 R.I. 457, 188 A.2d 79 (1963).

The statutory period in Rhode Island for establishing title by adverse possession is ten years, during which time the claimant must be "in the uninterrupted, quiet, peaceful and actual seisin and possession * * *." Section 34–7–1. The decided cases make clear that the adverse nature of the possession must be actual, open, notorious, hostile, under claim of right, continuous, and exclu-

sive. *Taffinder v. Thomas*, 119 R.I. at 551, 381 A.2d at 522; *Sherman v. Goloskie*, 95 R.I. at 465, 188 A.2d at 83.

█ The defendants contend that the Gammons have not met their burden of proof since they have failed to make an affirmative assertion of ownership in "Winona Street" to give notice to the world of their claim. This court has held that no particular act to establish an intention to claim ownership is required. It is sufficient if the claimant goes upon the land openly and uses it adversely to the true owner. The owner then becomes chargeable with knowledge of what is done openly on the land. *Greenwood v. Rahill*, R.I., 412 A.2d 228 (1980); *Sherman v. Goloskie, supra.*

The evidence is uncontradicted that the Gammons began cultivating "Winona Street" soon after they acquired their property in 1959. Doctor Jesse Potter Eddy III testified that he has been familiar with the Gammons' property and the area surrounding it since the 1940s. He testified that "Winona Street" was initially "all overgrown" and "like a jungle" and that there was no evidence of a street on the north side of the privet hedge. He stated that this changed after the Gammons acquired the property. The underbrush was cleared away, lawns were planted, gardens were established, and trees were planted. Doctor Eddy said that this activity extended all the way to the privet hedge.

█ In his bench decision, the trial justice recited Dr. Eddy's testimony as well as testimony from other witnesses, including Mr. Gammons himself. In view of this evidence, which the trial justice obviously found credible, we cannot conclude that he was clearly wrong in finding that the Gammons affirmatively asserted a claim of ownership up to the privet hedge, thereby encompassing "Winona Street."

The defendants next contend that since the Gammons, along with everyone else in Conanicut Park, initially had a right of passage over "Winona Street" because of the recording of the plat plan, the proof required to warrant a finding of adverse possession must establish that plaintiffs have ousted all others with a right of passage. It is argued that nothing short of a physical barrier will suffice to find the requisite ouster. They cite *Spangler v. Schaus*, 106 R.I. 795, 264 A.2d 161 (1970), in support of this contention.

The dispute in *Spangler* also involved an action to quiet title to land in Jamestown by adverse possession, but the facts in the case were markedly different from ours. The Spanglers alleged that they had adversely acquired land designated as Noanett Street. Noanett Street was a private road identified on various recorded documents as running from a public highway, Walcott Avenue, to Narragansett Bay. One of the recorded documents that referred to Noanett Street was the Spanglers' deed. The deed described the Spanglers' lots as bounded by Noanett Street, and it also stated that the property was subject to restrictions, conditions, and covenants contained in a prior deed. The earlier deed identified Noanett Street and indicated that it was to be held for the common use of all abutters to the street. It also granted a right to erect and maintain bathhouses on Noanett Street to the abutters and provided that the expense of opening and maintaining the street was to be borne jointly by the abutters in proportion to their respective frontage on the street. Noanett Street never became a public highway, nor did it have the physical appearance of a street.

On the basis of the rights granted by deed, this court held that all of the abutters had an easement as tenants in common in Noanett Street. *Id.* at 804–05, 264 A.2d at 166. The court also held that stronger evidence is required to establish the adverse possession of a cotenant than the adverse possession of a stranger. When one cotenant seeks to sever his relationship as a cotenant and render his possession adverse, he must "clearly show that his possession is so overt, notorious, and so wholly inconsist-

ent with the other cotenants' rights as to be equivalent to an ouster between a landlord and a tenant." *Id.* at 205, 264 A.2d at 166. The court found that the Spanglers had failed to make the required showing.

There are several major differences between the *Spangler* case and the one before us. There is no cotenant relationship in this case. Unlike *Spangler*, the Gammons' deed does not create specified rights for the abutters or other residents of Conanicut Park in "Winona Street." The defendants' property does not abut "Winona Street." In this case defendants' claim of right is based solely on the recording of the Conanicut Park plat plan. Although, as we have said, this act amounts to an incipient dedication of "Winona Street," thereby conveying a right of use, this right is extinguishable by a valid claim of adverse possession in the absence of any showing of a dedication or public user. *Parrillo v. Riccitelli, supra.*

■ Under the facts presented by this case, the Gammons were not required to make the showing that was necessary in the *Spangler* case. It has been said that the ultimate fact to be proved in adverse possession is that the claimant has acted toward the land in question "as would an average owner, taking properly into account the geophysical nature of this land." (Footnotes omitted.) 7 Powell *The Law of Real Property* § 1018 at 740 (1981). Cultivating land, planting trees, and making other improvements in such a manner as is usual for comparable land have been successfully relied on as proof of the required possession. *Id.* Evidence of an ouster and the erection of a physical barrier are not required in the typical adverse-possession case, and none is required here.

Lastly, defendants claim that the evidence failed to show a ten-year period of continuous and exclusive use. They concede that the Gammons commenced improving the property to the privet hedge upon purchasing it in 1959. However, they assert that their own use of "Winona Street" to gain access to Narragansett Bay, and the similar use by their predecessors in title, constituted an "interruption and cessation" of the Gammons' continuous and exclusive use.

■ In considering this point, the trial justice found that the assertions made by Mr. Haymon, defendants' predecessor in title, regarding the right of way and the other testimony supporting defendants claim did not interrupt the exercise of the Gammons' claim. We agree. The mere fact that the Liberatis occasionally crossed "Winona Street" in no way interrupted the continuous and exclusive nature of the Gammons' claim. Aside from the fact that the Gammons made continuous improvements to the property commencing in 1959, there is no evidence showing that the defendants made any use of the property similar in nature to that of the Gammons. In order to find that the property was not used exclusively by the Gammons, there would have to be evidence indicating that the defendants or others had made improvements to the land or, at the very least, had used the land in a more significant fashion than merely walking across it. Keeping in mind that controversies concerning the continuity of possession most commonly center on the adequacy of the claimant's own acts, we find nothing in this record that warrants reversal. 7 Powell, *supra*, § 1014 at 720. In fact, there is evidence that Mr. Gammons posted a sign on "Winona Street" to keep people out and verbally disputed any claim of a right of way.

In light of the foregoing, we find no error on the part of the trial justice quieting title in the Gammons in all respects. The appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.

WEISBERGER, J., did not participate.

APPENDIX A