Adeline D. BOVI et al.

v.

Bruce P. MURRAY.

No. 91–63–Appeal.

Supreme Court of Rhode Island.

Feb. 4, 1992.

Robert Nocera, Pawtucket, for plaintiff.

Paul Borges, Providence, for defendant.

OPINION

KELLEHER, Justice.

This matter is before us because the defendant, Bruce P. Murray (Murray), appeals from an order by which a Superior Court justice granted a permanent injunction that prevented Murray from blocking the plaintiffs, Adeline D. Bovi and John J. Bovi, Sr. (the Bovis), from using Murray's driveway to gain access to the rear of their property.

The history of the properties appears undisputed. The Bovis own lot Nos. 3, 3.1, and 3.2 of land located in East Providence at an intersection known as Six Corners. Bovi's Tavern, operated by the Bovi family since 1949, is situated on lot No. 3.2. A commercial retail building sits on lot No. 3. Murray owns lot No. 4, which lies adjacent to the Bovis' parcels and is developed with a multifamily house and retail stores. Between the tavern and Murray's building is a large blacktopped area that provides parking for approximately twelve cars.

In 1949 Lucia B. Solomon, who owned lot Nos. 3, 3.1, and 3.2, leased a building on lot 3.2 to Dolce's Restaurant, Inc., d/b/a Bovi's Town Tavern. In 1962 she sold these lots to M & B Realty Corporation (M & B Realty). John J. Bovi, Sr., late husband of Adeline, was a principal shareholder in the corporation. When John, Sr., died in 1969, Adeline bought lot Nos. 3, 3.1, and 3.2 from M & B Realty and deeded lot No. 3.2 to her son John, a named party here, who manages the tavern today.

Lot No. 4's history is equally unexceptional. In 1973 lot No. 4 was sold to Solomon Realty Co. (Solomon Realty), which in 1985 sold it to Aquidneck Enterprises, Inc. (Aquidneck). In 1988 Murray, who has an interest in Aquidneck, acquired sole title to lot No. 4.

In 1973 the Bovis entered into a lease agreement with Solomon Realty, which owned lot No. 4 at that time. The pertinent language of the lease indicates that Solomon Realty granted the Bovis "the right and easement to pass and repass over and across the demised premises at any time for the purpose of having access to the rear of Lot No. 140 * * * for the purpose of having merchandise delivered."[1] The Bovis argue that the subject of this lease was customer parking for the tavern on lot No. 4 and not the right to use the driveway. On the other hand Murray contends that the lease was entered into, in part, to secure the permission the Bovis needed to use lot No. 4's driveway. Although the lease terminated in 1983, the Bovis orally agreed to extend the agreement with the owner.

Apparently in late 1990 the Bovis discontinued paying rent. In response Murray placed a locked chain across the driveway, thus preventing the Bovis from crossing lot No. 4 to reach the rear of their property. Later Murray situated an empty trailer along his boundary line between the parties' property, effectively blocking any access to the rear of the Bovis' lots. The Bovis sought to enjoin Murray from blocking their use of the driveway and access to the rear of their property.

At a hearing on the Bovis' request for an injunction, no testimony was taken, nor were any transcripts produced. The trial justice found that the Bovis had established an implied easement to pass and repass over Murray's driveway. The trial justice further ordered Murray to remove the chain barrier and trailer preventing access to the rear of the Bovis' property. Finally the trial justice enjoined Murray, his heirs, and assigns from constructing or maintaining any such barrier in the future.

■ In granting the Bovis' request for an injunction, the trial justice made few findings of fact. We believe the Bovis do not have an implied easement across Murray's property. However, we observe that although the Bovis argued that they acquired an easement by prescription, the trial justice made no findings regarding this issue. Accordingly we remand this case to the Superior Court for a determina-

---

1. Although the August 30, 1973 lease refers to "Lot No. 140," the tax accessor's map, provided by both parties, clearly labels the lot as lot number 4, and it will be referred to as lot No. 4 here.

tion regarding the existence of a prescriptive easement.

■■■ An implied easement is predicated upon the theory that when a person conveys property, he or she includes or intends to include in the conveyance whatever is necessary for the use and the enjoyment of the land retained. *Story v. Hefner*, 540 P.2d 562, 566 (Okla.1975). If there is no unity of ownership, there can be no implied easement. *Selvia v. Reitmeyer*, 156 Ind. App. 203, 208–09, 295 N.E.2d 869, 873 (1973). Indeed the unity requirement prevents a finding of an easement by necessity in the land of a third person who is a stranger to the claimant's title. 3 R. Powell, *The Law of Real Property* ¶ 411 (1991).

Although there are no specific cases on this issue in our jurisdiction, we observe that when an implied easement has been established in Rhode Island, unity of title has been constant. When the common owner divided his property in *Wiesel v. Smira*, 49 R.I. 246, 142 A. 148 (1928), this court determined that an implied easement was created to maintain a sewer pipe from the property of the defendants across the property of the plaintiff. *Id.* at 248–49, 142 A. at 151; *see also Spangler v. Schaus*, 106 R.I. 795, 264 A.2d 161 (1970); *Providence Institution for Savings v. Lincoln Trust Co.*, 64 R.I. 378, 12 A.2d 404 (1940).

Nothing in the record indicates that the properties of the Bovis and of Murray were held by a common owner. Without unity of title, an implied easement cannot exist. Accordingly the defendant's appeal is sustained. We vacate the order and injunction and remand to the Superior Court for a determination in regard to the existence of a prescriptive easement.