[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
The above-entitled matter was heard by this Court sitting without a jury and judgment thereon was reserved on December 11, 1992. Pursuant to G.L. 1956 (1991 Reenactment) § 34-7-1, plaintiff Gerald J. Miller, Jr. seeks seisin of certain of defendant Pascoag Lake Shores Improvement Association's real property by adverse possession. Contrariwise, defendant Pascoag Lake Shores Improvement Association refutes this claim of adverse possession and, moreover, seeks seisin of certain accretions to the subject property which have purportedly been deeded by defendant Pascoag Reservoir Corporation to plaintiff Gerald J. Miller in partial settlement of this matter.
From June 1957 to the present time, plaintiff Gerald J. Miller, Jr. ("the plaintiff") has owned and resided at 173 Lake Shore Drive in Glocester, Rhode Island. This property is identified by the town of Glocester tax assessor as "Lot 1" on the plat entitled Pascoag Lake Shore Complete Sec. B., Glocester, Rhode Island, dated July 1946, found in drawer 9, plat card 266, on hanging file 124, map 386C, dated May 13, 1992. See Appendix A.
Abutting the plaintiff's lot is another lot (in that same drawer and plat card, hanging file and map, dated May 13, 1992), entitled "Beach Lot." This lot has been owned by defendant Pascoag Lake Shores Improvement Association ("The Association") since 1963. See Appendix A.
In 1965, the Association indicated that it was going to erect a dock extending from its beach lot ("beach lot" or "subject property") into the bordering Pascoag Reservoir, and a fence between its beach lot and the plaintiff's lot. Before this was done, however, the plaintiff initiated a civil action that sought, by a claim of adverse possession, to prevent such construction. That action resulted in a consent decree ("the decree") that prohibited the aforementioned construction, but also required that the plaintiff be "enjoined from occupying, obstructing or interferring [sic] with the rights of other lot owners of said plat in and to any portion of the [beach lot] in any manner, excepting that the [plaintiff] shall have the same rights in common with other lot owners within the aforementioned plat of free access to and use of the [beach lot]." See
Appendix B. The term "other lot owners" referred to the plaintiff's neighboring lot owners, whose deeds entitled them access to and egress from the reservoir via the beach lot.
Following the entry of the decree, however, the plaintiff nevertheless attempted to use the beach lot to the exclusion of the parties specified in the decree. While the plaintiff has granted reservoir access to some persons via the Association's beach lot, since the entry of this decree there has been a continuous series of confrontations between the plaintiff and others stated in the decree who have sought access to the reservoir via the Association's beach lot. In short, the plaintiff ignored the decree.
By 1988, the plaintiff apparently was tired of the Association members seeking to use their own land to access the reservoir. Thus, in 1988, he filed this action seeking to be seised of the beach lot by virtue of adverse possession. Since that time, in June of 1992, the plaintiff and defendant Pascoag Investment Corporation ("the Corporation") purportedly entered into an agreement deeding "parcel B," a portion of land between the beach lot and the reservoir, from the defendant Corporation to the plaintiff. See Appendix A. Thus, in addition to countering the adverse possession claim, the defendant Association seeks to prevent the plaintiff from using this newly deeded parcel to its members' detriment.
The plaintiff contends that he should be vested of the subject property in fee simple by virtue of having adversely possessed it for the statutory period. In support of this contention, the plaintiff proffered a variety of evidence at trial: his use of a patio and driveway that have accessed his property via the beach lot since before he moved-in; his filling-in and cultivation of the beach lot; his replacement of a wall upon the beach lot; his installation of a walkway over and a drainage pipe under the beach lot; his construction of a swing set upon the beach lot; his storage of personal property upon the beach lot; his family's use of the beach lot as a driveway and backyard.
The plaintiff undoubtedly has made much use of the subject property, and clearly feels unqualified entitlement to the subject property by virtue of these aforementioned circumstances. However, this Court finds that the plaintiff has not established the elements of adverse possession recognized by the statutory and case law of this state. G.L. 1956 (1991 Reenactment) § 34-7-1
provides:
 Conclusive title by peaceful possession under claim of title. — Where any person or persons, or others from whom he or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during such time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, such actual seisin and possession shall be allowed to give and make a good and rightful title to such person or persons, their heirs and assigns forever; and any such plaintiff suing for the recovery of any such lands may rely on such possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for such lands, tenements or hereditaments, and such actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring such action.
In construing this statute in the context of the standard adverse possession case, the Supreme Court of Rhode Island has stated that in order to acquire title under this section, a claimant's possession must be "actual, open, notorious, hostile, under claim of right, continuous, and exclusive." Locke v.O'Brien, 610 A.2d 552, 555 (R.I. 1992) (quoting Sherman v.Goloskie, 95 R.I. 457, 465, 188 A.2d 79, 83 (1963)). At a minimum, each of these elements must be established "by strict proof, that is, proof by clear and convincing evidence", Locke,
610 A.2d at 555, for a period of ten years. Id.
Plaintiff contends that this is the standard adverse possession case, a Locke-type case if you will, and thus that this lowest possible adverse possession threshold should be applied. Even under the plaintiff's version of these events and the law, however, his claim fails. Even assuming, arguendo,
that the plaintiff established "actuality," "openness," "notoriety," and "continuousness," there has not been sufficient "claim of right" or "hostility" in order to meet the foregoing standard.
The plaintiff's very testimony indicated that he was always under the realization that the defendant Association was the record owner of the subject property, both before and since entry of the consent decree. Despite this realization, however, he nevertheless seeks title by adverse possession by virtue of having tried physically to commandeer and monopolize the activity that took place upon the subject property.
However, a would-be adverse possessor cannot, on the one hand, be fully cognizant of another's unqualified ownership of land and, on the other hand, maintain that he has had a "claim of right" to that same property sufficient to satisfy the elements of adverse possession. Unlike the other elements of adverse possession, the "claim of right" element invites a court to examine the underlying mental state of the claimant to see whether he acted under the subjective impression that the subject property was his own. See Cunningham, et al. The Law ofProperty § 11.7 at 762 (1984).
Thus, this Court finds that the plaintiff has not establishedLocke-type adverse possession by clear proof. Contrary to the plaintiff's exhortations, however, this is not the standard adverse possession case. See, e.g., Gammons v. Caswell,447 A.2d 361 (R.I. 1982).
The plaintiff contends that the consent decree entered into between these parties in the 1960's is of no consequence in this action; that it did not adjudicate the rights of the parties; moreover, that it somehow "expired." What this consent decree indicates, however, is that this is not the standard adverse possession case between two "strangers" who have a mistaken belief about the nature and extent of their respective properties. Instead, before this Court is a claimant who has been given permission to use the subject property.
The 1965 consent decree sought to adjudicate these parties' respective rights in the subject property once and for all. The Association, by this decree, permitted the plaintiff to use the property while simultaneously insuring that this use would not go so far as to trample upon the Association's record ownership and concurrent ability to access the reservoir, which right was sought and acquired via the initial acquisition of the beach lot.
A consent decree such as the one entered into between plaintiff and defendant Association is not to be trifled with, as plaintiff has done. "`[T]he order must be complied with until it has been modified or dissolved.' Therefore, if [plaintiff] questioned the application of the consent judgment, [his] proper redress was to seek judicial construction or modification of the judgment, not unilaterally to disregard it." Trahan v. Trahan,455 A.2d 1307, 1311 (R.I. 1983) (quoting Menard v. WoonsocketTeachers Guild, 117 R.I. 121, 129, 363 A.2d 1349, 1354 (1976)).
Thus, the plaintiff is very mistaken that the consent decree did not serve as a proclamation of the parties' respective rights to the subject property. This was precisely its purpose and effect.
While the decree does not altogether foreclose a finding of adverse possession, at the very least its presence indicates that the plaintiff's use of the subject property was not "hostile" as that term is defined under adverse possession jurisprudence, and thus that the Locke burden has gone unmet. But it means much more than this, however: because it affirmed that the plaintiff had permission to use the Association's property, the decree serves to raise the plaintiff's burden of proof.
As in Spangler v. Schaus, 106 R.I. 795, 264 A.2d 161
(1970), this Court is confronted with a plaintiff and defendant who both have rights in the subject property. The consent decree permitted the plaintiff to use the subject property in common with the other members of the defendant Association. As such, the plaintiff "held such an easement as tenants in common." SeeId. 106 R.I. at 804, 264 A.2d at 166. And, "[s]tronger evidence is required to establish the adverse possession of a cotenant than the adverse possession of a stranger." Id.; City ofprovidence v. Devine, 58 R.I. 204, 192 A. 212 (1937). "The law presumes that when the character of the occupation of land is not initially adverse, as in this case, it continues to be of the same nature in the absence of some conduct indicating a change."Spangler, 106 R.I. at 804, 264 A.2d at 166; Tefft v.Reynolds, 43 R.I. 538, 113 A. 787 (1921).
"[C]onduct indicating a change" means that the plaintiff must "clearly show that his possession is so overt, notorious, and so wholly inconsistent with the other cotenants' rights as to be an equivalent to an ouster between a landlord and a tenant. . . . [The plaintiff] had to show acts of possession which were not only inconsistent with but in exclusion of the continuing rights of other cotenants." Id.; Sabins v. McAllister, 116 Vt. 302, 70 A.2d 106. This the plaintiff has not done.
While the plaintiff's testimony indicated that he has maintained a clear and contemptible subjective disregard of the previously entered consent decree, under the circumstances surrounding the subject property his overt, objectively ascertainable actions were insufficient to put the defendant Association on clear notice of the plaintiff's subjective intentions. Although some of the Association members have had confrontations with the plaintiff concerning use of the subject property, a host of other members have not had such confrontations. It appears that the latter group is comprised of those neighbors who have been lucky enough to enter into the good graces of the plaintiff such that they could have access to the subject property, and thus, the reservoir. These do not amount to objectively ascertainable actions that could be used to meet theSpangler standard of adverse possession subsequent to initial permissive use.
In short, as with the Locke standard, the evidence adduced at trial relative to the Spangler burden of proof is ambiguous at best. This Court must find, then, that the plaintiff has not sustained his burden of proving adverse possession by clear and convincing evidence.
There remains the issue whether plaintiff's acquisition of a portion of property in partial settlement of this matter somehow affects defendant Association members' ability to access the reservoir. It does not. While the Association is unable, as it contends, to prohibit this transfer, its members may nevertheless access the reservoir by this recently transferred tract of land.
In light of the peculiar nature of subject property as an access road to the reservoir, no evidence indicates that the Association's right of way over the subject property has been destroyed merely by the transfer of title to a Reservoir-abutting portion of property. While the plaintiff may obviously feel free to exercise ownership of his newly-acquired portion of the property, he may not act so as to impair ingress to and egress from the reservoir by the Association members.
Such a right of way has at different times been titled a "quasi-easement," Wiesel v. Smira, 49 R.I. 246, 248-49,142 A. 148, 151 (1928), an "implied easement," Bovi v. Murray,601 A.2d 960, 962 (R.I. 1992), or a "right-of-way by implication."Providence Institute for Savings v. Lincoln Trust Co.,64 R.I. 278, 12 A.2d 404 (1940). As such, the precise terminology is not easily gleaned from the case law. However, the precise terminology is inconsequential.
In Murray, supra, the Supreme Court of Rhode Island adopted the "implied easement" reasoning of the Supreme Court of Oklahoma in Story v. Hefner, 540 P.2d 562 (Okla. 1975). The situation at hand is most similar to that in Story. Here, a consent decree clearly confirmed an easement running from the street to the water in favor of the Association. This easement existed at the time of the separation of the subject property. The deed separating the property contains no express provision eliminating this use. Therefore, this Court finds that an easement must be implied into the deed.
Unlike the court in Story, however, this Court is not relying primarily upon undocumented facts and circumstances to imply an easement into a deed. Here, implying an easement into the deed simply gives effect to the consent decree, which gave the Association access from the street to the reservoir. This access cannot be abrogated by one's simply filling-in an area between the beach lot and the reservoir in defiance of the unequivocal mandate set forth in the decree.
Indeed, to imply anything else into the recent transfer of land would abrogate a consent decree which, as stated infra,
retains its force until an affirmative reconstruction or abrogation of that decree is sought and granted. Here, the defendant Association does not consent to an iota of change in the terms of the decree, nor is there reason to order one. On the contrary, their access should be, and is, protected.
This Court will not engage in the illogical assumption that this implication was not intended. Transfer of one portion of the subject property between the street and the reservoir without reserving the existing easement would leave the local residents with a virtually useless parcel of land. The stretch of land between the street and the reservoir was intended as, and always has existed as, an access road, despite the plaintiff's actions and the transfer of record ownership of some newly created portion of that very same access road.
Accordingly, the plaintiff is permanently enjoined from preventing the defendants from reasonable access to the Pascoag Reservoir. In effect, the substance of the consent decree remains: the defendants may not be disturbed as they attempt to access the Reservoir over theirs and the plaintiff's parcels.
Counsel shall prepare an appropriate judgment for entry.
APPENDIX A
[EDITORS' NOTE: EXHIBIT A IS ELECTRONICALLY NON-TRANSFERRABLE.]
APPENDIX B
[EDITORS' NOTE: EXHIBIT B IS ELECTRONICALLY NON-TRANSFERRABLE.]