CITY OF PROVIDENCE *vs.* WINIFRED DEVINE *et al.*

MAY 19, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, and Condon, JJ.

FLYNN, C. J.   This is a bill in equity in the nature of a bill of interpleader.   It was brought by the city of Providence to have determined the respective claims and interests of the respondents in the sum of $5,765, held by the city.   This sum represents the amount of damages which the city agreed to pay to the owners of the fee in two lots of land, formerly owned by the ancestors of these respondents, as tenants in common, and condemned by the city in 1930 for school purposes.

In the superior court, the case was fully heard before a justice in equity upon bill, answers, replications and proof. Thereupon a decree was entered, denying the claims of the respondents, Genevieve Hughes and John J. Hughes, as to any interest in the land at the time of its condemnation, or in said fund, and ordering payment by the city of the entire fund, except $25 allowed to cover complainant's expenses, to the respondents, Winifred, Agnes, Sarah and John Devine, and permanently enjoining all respondents from making any further claims, arising out of said condemnation.

The cause is before us on an appeal from this decree taken only by Genevieve Hughes, who relies on the single reason that the court erred, on the law and evidence, in holding that the title of the appellant, as tenant in common, was lost by the adverse possession of the other respondents Devine.

There is some question if the facts here present the ordinary case to entitle the city to bring a bill of interpleader.

However, the case was treated and fully heard by the court, apparently for practical purposes by consent of all parties, as a bill in the nature of a bill of interpleader, and in the absence of any suitable objection, we shall so treat it.

It appears in evidence that the city of Providence, by virtue of and pursuant to the provisions of public laws, 1895, chapter 1402, as amended, adopted a resolution numbered 589, approved November 21, 1930, whereby it condemned for school purposes certain land in the vicinity of Windmill street, in Providence. Accordingly it filed the necessary plat showing the land so condemned, which included two lots identified in evidence as lots numbered 350 and 351 on the assessors plat No. 77, although the bill describes it as plat No. 97.

Originally these two adjoining lots comprised one parcel in a section of North Providence, which later became a part of Providence, and was owned by John Andrews and wife, Louisa. They conveyed it by warranty deed, dated May 28, 1864, to James Hughes and Maria Follensbee, as tenants in common. On November 10, 1864, by their indenture of partition, said James Hughes and Maria Follensbee divided this parcel, whereby Maria Follensbee became the owner in fee of the northerly half and James Hughes became the owner in fee of the southerly half thereof.

The title to said northerly half, later designated as lot 351 on the assessors plat, passed by a series of mesne conveyances from Maria Follensbee to one of the respondents, Winifred Devine, and her title thereto and her corresponding interest in this fund is not disputed.

The chain of title to the southerly half, later designated as lot 350 on said assessors plat, is important in deciding the question here presented.

On December 21, 1868, James D. Hughes, apparently the same as the above-mentioned James Hughes, mortgaged to Phineas D. Wesson for the sum of $80, "one undivided half part of a certain lot of land," thereinafter described by

metes and bounds, which is apparently identical with the description of said lot 350.

On December 13, 1870, this mortgage was transferred by said Wesson to one John Hughes, who is not otherwise identified by the evidence. Said John Hughes later foreclosed this mortgage by auction sale, held November 24, 1874, at which the mortgaged property was purchased by Thomas Devine, who received from said Hughes a mortgagee's deed, dated December 5, 1874. This deed describes the land, as it was described in the mortgage, viz.: *"One undivided half part of a certain lot of land,"* etc., and then follows a description by metes and bounds, which corresponds with that of lot 350 above referred to. Thereafter, in October 1897, Thomas Devine conveyed *by a warranty deed* the *whole* of lot 350, together with seven other separate lots or parcels of land, to Henry W. Sprague.

On the same date, Henry W. Sprague mortgaged said eight lots of land, including all of lot 350, to J. Wilson McCrillis for the sum of $5,000.

On the following January 28, 1898, Henry W. Sprague conveyed by quitclaim deed back to said Thomas Devine the said eight lots, including the whole of lot 350, for a named consideration of $10. On February 11, 1898, the above McCrillis mortgage was satisfied, and discharged of record.

From January 1898, to November 1930, when the land was condemned by the city, it appears from the evidence and fair inferences therefrom, that said Thomas Devine and his children, the respondents Devine, who were his successors in title, continuously and without interruption were in the quiet, peaceful and exclusive possession of the whole of lot 350; that they cleared the brush and undergrowth and cut some bushes and trees from this lot 350, from time to time, to prepare it for cultivation; that they obtained a permit from the city to blast, and accordingly did blast, rocks located on lot 350, and cleared them, to-

gether with stones, from this lot to make it more useful in connection with their homestead and farm; that they maintained the rail and wire fences on the sides and a stone wall in the back, all of which comprised a complete enclosure of this lot; that they planted and cultivated it, as fully as the nature of the land permitted; and gathered all the crops for themselves; that Thomas Devine in his lifetime, and after his death, the respondents Devine, always paid all of the taxes upon lot 350; and generally that they used and claimed it as their own, altogether for over fifty years, as completely as it was reasonably possible, considering the circumstances.

On June 3, 1931, the respondents Devine filed their petition in the superior court, in accordance with the statute, to have assessed and paid to them, as owners of these two lots 350 and 351, damages resulting from their condemnation. They also negotiated with the city concerning the damages to be paid for such condemnation of these lots, claiming themselves to be the owners of the whole of lot 350.

In May 1932, they entered into a written agreement or so-called option with the city whereby they bound themselves to execute and to deliver to the city, upon payment to them by the city of the agreed damages of $5,765, a *warranty deed* to said *lots numbered 350 and 351,* and further to execute a general release to the city of all their claims as owners of the fee in said two lots.

The appellant claims that the early transactions, above referred to and relating to lot 350, created a tenancy in common between James Hughes, the appellant's ancestor, and Thomas Devine, father of the respondents Devine, whereby each owned an undivided half of said lot 350.

The respondents Devine contend that the description, "an undivided half part of a certain lot of land," *etc.,* appearing in the James Hughes mortgage, and in the later mortgagee's deed to Thomas Devine, was intended to mean one half of the *original tract,* and that the respondents

Hughes, therefore, have no real title to lot 350; and also that, in any event, subsequent evidence established their own title to the whole of lot 350, by virtue of adverse possession under our statute. G. L., 1923, chap. 300, sec. 2.

The justice in equity found that the language of the deed was not ambiguous and created originally a tenancy in common in lot 350, as appellant argues, between James Hughes and Thomas Devine; but that, on the evidence, the respondents Devine had later obtained good title to the *whole* lot by adverse possession under the statute, and were therefore entitled to the whole fund. He also found the appellant guilty of laches.

The basic questions presented are whether one cotenant can obtain good title to the whole of lot 350 by virtue of adverse possession; and if so, whether the evidence, which is practically undisputed, is strong enough to satisfy the requirements of G. L., 1923, chap. 300, sec. 2, *supra*. The pertinent portion of this section reads as follows: "Where any person or persons, or others from whom he or they derive their title, either by themselves, tenants, or lessees, shall have been for the space of ten years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during the said time, claiming the same as his, her or their proper, sole and rightful estate in fee-simple, such actual seisin and possession shall be allowed to give and make a good and rightful title to such person or persons, their heirs and assigns forever; . . . ."

Ordinarily the possession of land by one cotenant inures to the benefit of the other cotenants and is presumably not adverse to their correlative rights to its possession. By the weight of authority, however, one cotenant may hold and obtain title to the *whole* land by operation of the law of adverse possession. But, in such cases, stronger evidence is required to prove such adverse possession than in similar claims by strangers to the title. 1 Cyc. 1072-1074. It

seems settled that, to prove adverse possession against other cotenants, the evidence must establish actual ouster or disseisin, and a compliance otherwise with the statutory requirements. This does not mean, however, that a physical ouster, as by eviction, must take place. The authorities here and elsewhere hold that the equivalent of an ouster or disseisin may be established where the evidence clearly shows one tenant's conveyance by warranty deed and an entry thereunder by the grantee, or where the possession of one tenant is so overt and notorious and so wholly inconsistent with the rights of the other cotenants to its possession as to amount to notice of definite denial of such rights. *Tiffany* v. *Babcock*, 51 R. I. 350; *Union Savings Bank* v. *Taber*, 13 R. I. 683; *Dodge* v. *Lavin*, 34 R. I. 409. See also *Astle* v. *Card*, 52 R. I. 357.

In *Tiffany* v. *Babcock, supra,* the court followed the rule above indicated by the weight of authority. In that case it held that a conveyance by one cotenant *by his warranty deed* to the *whole* of three parcels of land, formerly held in common, and the grantee's entry thereunder claiming exclusive possession, was the equivalent of actual disseisin of the other cotenants.

In that case also, a fourth parcel or wood lot was not conveyed by warranty deed but remained in possession of one Babcock and his heirs, who claimed it as their sole property for more than the statutory period, cutting the wood, paying all the taxes and generally exercising such complete possession and dominion over it as the character of the land permitted. See *Dodge* v. *Lavin, supra.* As to this parcel, the court then held that the act of the tenant in cutting the wood off the lot forty years previously and the continued use of the lot for a supply of fuel constituted an exercise of possession "so overt or notorious that the cotenant may be presumed to have known it. *Union Savings Bank* v. *Taber, supra.*"

We are of the opinion that the facts of the instant case

bring it within the limitations of, and are governed by, *Tiffany* v. *Babcock,* and the cases cited, *supra.*

By undisputed evidence, it thus appears that in 1897 Thomas Devine conveyed by his warranty deed to Henry W. Sprague the whole of what is lot 350. Sprague then mortgaged the land, including this lot, to a third person for a valuable consideration. These acts together seem to us to be such an exercise of exclusive dominion over the whole lot in question and to be so inconsistent with the rights of any cotenant as to amount to a disseisin and ouster of the other cotenants, under *Tiffany* v. *Babcock, supra.* Both of the above-mentioned conveyances were duly recorded in the land records of Providence and were some further evidence of notice to all cotenants of their disseisin and ouster, and of the adverse character of the possession claimed by Thomas Devine, and later by his children.

If the adverse possession began November 1874, when Thomas Devine originally purchased and took possession of the lot, the twenty years required to obtain title by possession under the statute then in force already had expired at the time he conveyed the land to Sprague in 1897.

But if the period only began to run from 1898, after the above disseisin and ouster of other cotenants took place, and when Thomas Devine repurchased and took possession thereof in his sole name and right, then thirty-two years, or much more than the time required by statute, had elapsed when the land was condemned in 1930.

Still further, if it be argued that the respondent Genevieve Hughes was a minor in 1898, her own testimony admits that she became of age in 1904. She also admitted actual knowledge in 1898 of her own alleged interest of record in the land and of the continued possession by the respondents Devine, which was so overt and notorious as to convey presumptive notice to her of their adverse claim of ownership of the whole lot. The evidence is clear and strong that the respondents Devine, from 1904 to the date

of condemnation, 1930, were unquestionably in such open, uninterrupted, quiet, peaceful and actual seisin and exclusive possession of this lot, claiming it as their own rightful estate in fee simple, as to satisfy the requirements of G. L., 1923, chap. 300, sec. 2, *supra*.

The evidence satisfied the justice to the extent that he concluded it was hard to find what more could have been done by the respondent Devine, considering the nature of the land.

Meanwhile, the respondent Genevieve Hughes did nothing to claim her interest in the land, nor did any of the respondents Hughes pay any of the taxes. Although Genevieve Hughes testified that her uncle, John Hughes, had disappeared and was dead or unaccounted for, he nevertheless appeared later during the hearing and upon his motion was permitted to be joined as a party respondent. He filed his answer accordingly, but he has not joined in this appeal. Not until the city was searching the title, in preparation to closing its negotiations with the respondents Devine in 1932, did the respondent Genevieve Hughes, appellant here, make known her claim. She then sued the city of Providence in assumpsit, claiming an undivided one-half interest in lot 350 and the corresponding interest in the damages which the city had previously agreed to pay to the Devines for the condemnation of their land. She had not previously filed any petition in court for the assessment of damages or made any other claim, as an owner, upon the city.

Under the authority of *Tiffany* v. *Babcock, supra,* and other cases cited, *supra,* and upon the undisputed evidence, we are of the opinion that the justice in equity was correct in his decision, awarding the entire fund, less $25 agreed upon as reasonable expenses, to the respondents Devine.

For the reasons stated, the respondent Hughes' appeal is denied, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*John T. Walsh, Assistant City Solicitor,* for complainant.
*Thomas L. Marcaccio,* for respondents Devine.
*Justin P. McCarthy,* for respondent Hughes.