**M & B REALTY, INC., et al.**

v.

**Pierre DUVAL et al.**

**No. 99–375–Appeal.**

Supreme Court of Rhode Island.

March 12, 2001.

---

Lauren E. Jones, Providence, David F. Fox, Middletown, for Plaintiff.

Thomas R. Brady, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Court on cross-appeals from a grant of summary judgment entered in favor of the plaintiffs, M & B Realty, Inc. (M & B), Bluebill, Inc. (Bluebill), and William and Dorothy Backman (plaintiffs or Backmans). The defendants, Pierre, Anne, Jean, Karen, Gerard, and Barbara Duval (defendants or Duvals), have challenged the finding by the trial justice that rejected the defendants' claim of ownership by adverse possession and concluded that a disputed right-of-way was intended for the benefit of all abutting landowners to provide access to both Park Street and Blue Bell Cove in Portsmouth. On cross-appeal, the plaintiffs argued that, although the trial justice properly granted their motion for summary judgment, she erred in denying their claim for punitive and compensatory damages. We reverse.

### Facts and Travel

In an unfortunate absence of neighborliness, a dispute developed between adjoining landowners over property rights to Blue Bill Way (Way)—a right-of-way leading from Park Street, a state highway in the Island Park section of Portsmouth, to Blue Bell Cove (Cove), a sheltered nook of salt water adjacent to the Sakonnet River. The parties' interests in this action stems from their ownership of various lots that abut the Way, the Cove, or both.[1] The

1. Ownership of the lots is as follows: Pierre and Anne Duval own lots 61 and 62; Jean and Karen Duval own lot 60; Gerard and Barbara Duval own lot 59; William and Dorothy Backman own lots 58, 63, and 63B. All the lots owned by the Duvals abut both the

lots in issue were originally platted in 1903 through a "plan of land" developed by Cornelius S. Greene (Greene Plan). In July 1903, the plan of land was surveyed by E.I. Marvell (Marvell Survey). The Way, laid out and designated on the original plat as a "12 Foot Way," was depicted as an area between solid lines running from Park Street to the Cove.[2] The plat was duly recorded in the land evidence records of the Town of Portsmouth. In the years following, the lots depicted on the Marvell Survey were deeded out by the Greene heirs. Notwithstanding these conveyances, title to the Way has never been conveyed individually nor in connection with any of these deeds. However, the parties' original deeds to the lots at issue all mention the Way, the Marvell survey, or both.

Both plaintiffs and defendants maintained that they have vacationed in the Cove area beginning in the 1950's; however, each party's actual ownership of the lots in question did not begin until much later. The deeds demonstrate that ownership of the Backman lots began on May 23, 1985,[3] and that the Duval's ownership began on January 14, 1981.[4]

The genesis of this dispute was a fence, erected in 1995, that completely blocked that portion of the Way that provides access to the shore of the Cove.[5] This action was allegedly taken by the Duvals in response to the Backmans' recent rental of

their home, located on lot 63B, to four Roger Williams University students. On December 30, 1996, the Backmans countered by filing this action for declaratory judgment, injunctive relief, and compensatory and punitive damages.

On August 7, 1998, after extensive pretrial activity, plaintiffs filed a motion for summary judgment. This motion was granted in part and denied in part by the trial justice who found that the Way provided "the sole access to both Park Avenue [*sic* ] and the Cove for all adjoining lots * * * [and, the] right of way was carved out so that the adjoining landowners would have access to both the street and Blue Bell Cove." Based upon these findings, the trial justice determined that the Way was not private property and therefore "is not an area which can be claimed by adverse possession." The trial justice also granted plaintiffs' request for injunctive relief, ordering defendants to "cease and desist from preventing, inhibiting, or in any way interfering with Plaintiff's use, enjoyment, and benefit of Blue Bill Way, [and] to remove any and all obstructions." Finally, the trial justice denied plaintiffs' request for damages, finding that "defendants actions were not malicious."

On May 11, 1999, defendants filed a motion for reconsideration with respect to the issue of the status of the Way. This motion was denied; the trial justice declared that the Way was intended to bene-

---

Way and the Cove, while the lots owned by the Backmans abut the Way only.

**2.** Similarly today, the Portsmouth Tax Assessor's Map 21 (Map 21) depicts the Way with solid lines and identifies it as "Blue Bill Way."

**3.** Originally, William Backman obtained ownership through his role as partner in the Backman Brothers Partnership (Backman Brothers). On October 26, 1988 and December 15, 1989, Backman Brothers conveyed lots 58 and 63, respectively, to William Backman, individually. On December 29, 1989, William Backman conveyed the properties to himself and Dorothy Backman, as tenants by the entirety. William and Dorothy then con-

veyed lot 63 to Maria Backman on May 5, 1995; and conveyed lot 63B to Bluebill, Inc. on April 24, 1996. Finally, on July 5, 1997, Maria Backman reconveyed lot 63 to William and Dorothy Backman.

**4.** Pierre and Anne Duval obtained lot 61 as tenants by the entirety on January 14, 1981; and, obtained lot 62 as joint tenants on September 26, 1983. Jean and Karen Duval obtained lot 60 as tenants by the entirety on February 8, 1989. Lastly, although his deed is not part of the record, Gerard Duval represented in an affidavit that his ownership of lot 59 began in 1994.

**5.** This represents the disputed portion of Blue Bill Way.

fit the owners of lots in the subdivision to provide access to the Cove. The trial justice reiterated her holding that ownership could not be established through adverse possession. The trial justice also noted that she did not find the Way to be a public right-of-way as defendants suggested and have argued to this Court. Rather, she found that the Greene Plan was designed so that the Way would benefit the owners of lots on the plat to provide access to both the public street and the Cove. Thus, the trial justice found that defendants failed to meet the threshold requirements necessary to establish ownership by adverse possession.

The defendants' motion to stay the injunction was denied. Judgment entered for both plaintiffs and defendants on June 3, 1999; defendants filed a timely appeal. The plaintiffs filed a cross-appeal on June 23, 1999, and subsequently amended the cross-appeal on August 2, 1999. On appeal, defendants argued, as they did to the trial justice, that dating to 1903, they and their predecessors have acquired the disputed portion of the Way through adverse possession, resulting in that portion of the Way becoming a private way, essentially for the benefit of the owners of lots 60 and 61 to the exclusion of all others. A review of defendants' submissions, filed in opposition to summary judgment, discloses a series of affidavits submitted by defendants and members of their families attesting to the fact that the disputed strip of land, situated between lots 60 and 61, has been in the exclusive possession of defendants for a period well in excess of the statutory requirement for ownership by adverse possession. Further, defendants asserted that the Way is a "paper street" that has never been opened or used as a thoroughfare. The defendants maintained, under the principles enunciated by this Court in *Gammons v. Caswell,* 447 A.2d 361 (R.I. 1982), that a right-of-way flowing from the recording of a plat plan is extinguishable

by proper proof of adverse possession. *Id.* at 366.[6] In the case now before us, the trial justice acknowledged the averments in defendants' affidavits that attested to their exclusive use of the Way. However, she also noted that in numerous applications to the Coastal Resources Management Council (CMRC), seeking permission to make various improvements to their respective properties, defendants consistently and specifically delineated the boundaries of each lot and clearly labeled the Way as a separate parcel, factors that are inconsistent with the defendants' claim of ownership and dominion over this property. In her decision granting summary judgment, the trial justice failed to address this apparent conflict in the evidence.

The plaintiffs' sole issue on cross-appeal relates to the refusal of the trial justice to award both compensatory and punitive damages.

## Summary Judgment

It is well settled that this Court reviews the granting of a summary judgment motion on a *de novo* basis. *Marr Scaffolding Co. v. Fairground Forms, Inc.,* 682 A.2d 455, 457 (R.I.1996). In conducting such a review, we are bound by the same rules and standards as those employed by the trial justice. *Rotelli v. Catanzaro,* 686 A.2d 91, 93 (R.I.1996). "[A] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1225 (R.I. 1996). "To oppose a motion for summary judgment successfully, a party need only provide the trial justice with evidence that, when viewed in light most favorable to that party, establishes the existence of a

**6.** We note, however, that the plaintiffs in *Gammons v. Caswell,* 447 A.2d 361 (R.I.1982), who claimed adverse possession, were not beneficiaries under the plat plan nor was their parcel depicted on the recorded plat.

genuine issue of a material fact." *Ferro v. Volkswagen of America, Inc.,* 588 A.2d 1047, 1049 (R.I.1991) (citing Super R. Civ. P. 56; *Peoples Trust Co. v. Searles,* 486 A.2d 619, 620 (R.I.1985)).

In concluding that defendants failed to establish ownership by adverse possession the trial justice relied upon this Court's decisions in *Kotuby v. Robbins,* 721 A.2d 881 (R.I.1998) and *Robidoux v. Pelletier,* 120 R.I. 425, 391 A.2d 1150 (1978). Specifically, the trial justice determined that, similar to the case at bar, the right-of-way in *Kotuby,* although held in fee by the defendants, was depicted on a recorded subdivision plat and served as a driveway for three lots in that subdivision. Further, there was uncontroverted evidence that the grantor intended to dedicate the right-of-way for ingress and egress to the street. In reliance on our holding in *Kotuby,* that "a recorded plat is all that is needed to disclose a landowner's dedicatory intent," 721 A.2d at 884 (citing *Robidoux,* 120 R.I. at 434, 391 A.2d at 1156), and that this principle also applies to the grant of private easements in subdivisions, *Kotuby,* 721 A.2d at 884, the trial justice concluded that the Way in question was intended by the grantor to afford the residents access to both the street and Blue Bell Cove. Therefore, the trial justice concluded, "it is not an area which can be claimed by adverse possession." Although this analysis correctly states our holdings in *Kotuby* and *Robidoux,* it overlooks the fact that in *Kotuby,* the right-of-way in question was a driveway directly in front of plaintiffs' homes and toward which plaintiffs Whitty deliberately faced their dwellings. This driveway was utilized without hindrance until defendants erected a fence and filed a notice of interruption of adverse possession. Significantly, we upheld the determination of the trial justice, *inter alia,* that the plaintiffs failed to sustain the burden of proof necessary to establish an easement by prescription for the statutory ten-year period. However, we reversed the finding that plaintiffs failed to establish an easement by implication. Based on the dedication of the right-of-way on a recorded plat, coupled with the fact that Kotuby and Whitty had continuously used the driveway until the fence was erected, we concluded that plaintiffs enjoyed an easement by implication. It should be noted, however, that the holding in *Kotuby* was made after a trial on the merits without the intervention of a jury.

In *Robidoux,* we upheld the finding of the trial justice that an ambiguity existed with respect to a disputed parcel that was depicted on a recorded plat as an area between broken or dotted lines, in contrast with other roadways that were delineated with solid lines. *Robidoux,* 120 R.I. at 435, 391 A.2d at 1155. Based upon this discrepancy, the trial justice found that the recorded plat did not amount to an incipient dedication of the strip to the public. Further, we rejected the plaintiffs' contention that, notwithstanding the lack of dedicatory intent by the grantor, plaintiffs had an easement over the strip. Although, as between the grantor and the grantee, the sale of a platted lot with reference to the plat will give the grantee a right to use the streets delineated on that plat, thereby creating an easement appurtenant to the property, the plaintiffs' lot was not a part of the original plat, and therefore the claim of easement was defeated. *Id.* at 436, 391 A.2d at 1156; *see also Gammons,* 447 A.2d at 364 (owner whose property is not depicted on a recorded plat and whose deed does not reference the recorded plat, is not bound by easements created by the recorded plat, and may acquire by adverse possession undeveloped property depicted as streets on the recorded plat).

■ Accordingly, in the case at bar, we are satisfied that the facts are distinguishable from *Kotuby* and *Robidoux* such that the question of adverse possession is not subject to a ruling as a matter of law. The decisions in *Kotuby* and *Robidoux* were fact intensive determinations made after a trial on the merits. Here, we are not persuaded that this record, viewed in the

light most favorable to the defendants, fails to disclose the existence of issues of material fact.

This case concerns land over which all owners of lots in the subdivision were intended to acquire the right of access as co-tenants-in-common and adverse possession is claimed by one co-tenant against another co-tenant. *See Spangler v. Schaus,* 106 R.I. 795, 804, 264 A.2d 161, 166 (1970) (landowners abutting streets intended by the grantor for the benefit of all owners on the recorded plat hold easements as co-tenants-in-common). It is well-settled that "[s]tronger evidence is required to establish the adverse possession of a co-tenant than the adverse possession of a stranger." *Id.* at 805, 264 A.2d at 166 (citing *City of Providence v. Devine,* 58 R.I. 204, 192 A. 212 (1937)). One who claims title by adverse possession as against a co-tenant must demonstrate, by clear and convincing evidence, acts of possession that are "not only inconsistent with but in exclusion of the continuing rights of the other cotenants." *Spangler,* 106 R.I. at 805, 264 A.2d at 166. We are satisfied that the record in this case presents questions of fact that warrant determination by a fact-finder.

As noted, defendants presented several affidavits attesting to their exclusive use and occupancy of the Way in question. Further, there is evidence in the record from which a fact-finder may conclude that no owner within the subdivision has used the Way for vehicular traffic or for passage on foot. Alternatively, defendants may be bound by the admissions made in official filings with the CRMC, and in other proceedings in which they have described the strip as a right-of-way and not part of their respective properties.[7]

On the other hand, plaintiffs have argued that the trial justice declared the Way to be public and therefore not subject to adverse possession. However, the record clearly indicates otherwise. The trial justice specifically indicated that in this action for declaratory judgment, she was neither requested nor did she find that Blue Bill Way was a public right-of-way. What is clear from the record is that the lots were originally sold with reference to the recorded plat, which established the original grantor's dedicatory intent as a matter of law. We have stated that "when a subdivider sells lots with reference to a plat, he grants easements to the purchasers in the roadways shown on the plat, with or without later dedication of the roadways to the public." *Kotuby,* 721 A.2d at 884 (citing 2 George W. Thompson, *Commentaries on the Modern Law of Real Property,* § 361 (1980 Replacement Ed.)). That is exactly what occurred in this case. Although in contrast to *Kotuby* and *Spangler,* no one apparently holds the fee in the roadway and no taxes are levied by the municipality, there was no finding by the trial justice that the roadways were accepted by the public either through official action or by user. Thus, plaintiffs' reliance on a public right-of-way is premature. Moreover, although the record in this case suggests that the defendants did nothing overtly hostile to the rights of other owners in the subdivision until they erected a fence in 1995, a period that is far short of the ten-year statutory requirement,[8] de-

7. In addition, during a 1997 hearing before the Portsmouth Zoning Board concerning an application by plaintiffs for a variance to lot 63, defendant Pierre Duval raised the issue that lot 63 was a corner lot abutting the right-of-way on two sides, and therefore, plaintiff was required to satisfy two front-yard setback requirements. The town solicitor agreed with Mr. Duval's representation answering "that the road was indeed a street within the meaning and intent of the ordinance and [two] front-yard setbacks were applicable." This may constitute an admission.

8. General Laws 1956 § 34-7-1 provides:

"Conclusive title by peaceful possession under claim of title.—Where any person or persons, or others from whom he, she, or they derive their title, either by themselves, tenants or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any

fendants submitted other evidence in opposition to summary judgment. For example, defendants averred that the disputed strip has been used as a lawn and as the site of family activities, including the placement of picnic tables, fencing, shrubs, patios, sidewalks, and other similar activities, including parking vehicles on a paved portion. Finally, with regard to plaintiffs' cross-appeal, in light of our decision reversing the grant of summary judgment and our conclusion that a finding of malice or lack of malice is a question of fact not ordinarily susceptible to summary judgment, the judgment denying the Backman's claim for money damages is vacated.

### Conclusion

For the reasons set forth herein, the defendants' appeal is sustained and the judgment of the Superior Court is vacated. The plaintiffs' cross-appeal is sustained and the judgment denying plaintiffs money damages is vacated. The papers in this case are remanded to the Superior Court.

Chief Justice WILLIAMS did not participate.

lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements or hereditaments, and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action."