DECISION
This case was tried before the Court, jury waived.
 A. Findings of Fact
In the 1970s, James Romanella Sons, Inc. ("Romanella") took possession of several adjacent lots on East Avenue in Westerly. These lots include Assessor's Plat 77, Lots 330 and 329. Romanella constructed a small shopping center on this lot.
In 1957, Dairyland took title to Assessor's Plat 77, Lot 331, which is immediately north of the Romanella property. Dairyland's lot has frontage on Granite Street where it meets East Avenue. The building on Lot 331 extended several feet onto Lot 332 on the westerly side of the common border. In August 1995, Romanella deeded an easement to Butterfly for access to Butterfly's loading dock on the westerly side at the westerly end of the common border. The easement permits "the continuance and maintenance of the building encroachment as shown on that plan" and also permits "ingress and egress to and from the loading dock at the southwest corner of the building at Lot 331 by vehicles, *Page 2 
and, on foot, but not semi-trailers, for loading and unloading equipment and merchandise for Grantee's place of business and for no other purpose."
From 1985 to 1989, a liquor store operated at the Butterfly site. This store was operated by Mr. and Mrs. Martin. Mr. Martin is an owner of Butterfly. The store received twelve to fifteen deliveries per week, most of them to the loading dock. Outside distributors made all of the deliveries. The store routinely used the spaces on the south side of the building for its employees parking. Several of these spaces extend onto the Romanella property. The Butterfly property loading dock was routinely accessed by the distributors by using the paths colored as green or brown on the map at Exhibit 12.
Prior to 1986 and continuing through 2006, Christmas trees were sold in a fenced off area by one of the Romanella tenants for one month each year. The fenced area included the six parking spaces designated on Exhibit 12, to the northwest of the one story metal building at 3 East Avenue ("the Laundromat"). The fenced area extended beyond the parking spaces approximately ten feet. This area varied in size, for as Ms. Martin put it, "each year [the trees] would take a little more space."
After the liquor store vacated, several other businesses leased the building from Butterfly. From 1991 through 2006, AutoZone[1]
used the disputed lot for access to the loading dock. An AutoZone tractor trailer came into the disputed lot once a week from 1991 through the present to deliver supplies. The tractor trailers accessed the lot by using the brown route or the green route as shown on Exhibit 12. Because of the size of the tractor trailers, they would enter the lot, pull up to the west side of the Laundromat, and then back to the loading dock. These trucks were about fifty feet long but were still able to navigate through the Romanella lot when the Christmas trees were present. *Page 3 
Occasionally, AutoZone employees needed to move their cars for these trucks to move in and out. AutoZone prefers its deliveries to be to the loading dock as the products are heavy, large and delivered on large pallets.
Even though AutoZone's deliveries were obvious, Romanella never prohibited AutoZone from making those deliveries to the delivery dock or accessing the lot. Before 2005, a manager from AutoZone complained to Mr. James Romanella that the Christmas tree sales were impeding his access to the loading dock. After Mr. Romanella informed the AutoZone manager that Romanella owned the lot and suggested that AutoZone employ smaller delivery trucks, no other complaints were raised, until this litigation.
Romanella operated an office at the northern edge of their property, to the west of the Laundromat and to the south of the loading dock. Mr. Sposato, an owner of Romanella, is in the office frequently and his windows face the disputed area. After a delivery truck struck the Romanella building, he investigated the easement agreement in May, 2010. He has occasionally moved vehicles for the trucks, and he has also chided the truck operators for blocking the lot and damaging the building.
The Romanella company plows areas of the lot. Butterfly also plows its lot and an area one-half the distance between its building and the Laundromat. Romanella has asphalted, seal-coated and striped its lot up to an area approximately where the easement lies.
While Butterfly owns the building to the north and has easement rights, they do not use the loading docks for deliveries, nor do its employees park on site regularly. Instead, the Butterfly tenants receive deliveries. Butterfly never informed its tenants that they could use any of the Romanella property, except for the easement area. *Page 4 
An Auto Audio store is another tenant in the Butterfly building. Several employees park routinely along the southern part of the building while others park in a basement garage off of Fairview Avenue to the west. Auto Audio receives bulk deliveries from UPS twice a day. These are received in small trucks which are driven directly to the loading dock using the green or brown routes shown on Exhibit 12.
The Romanella tenants, customers and employees regularly use the disputed areas as well. Customers apparently drive through all entrances to the two lots and deliveries are made to the Romanella tenants by driving through the disputed area to the north of the Romanella building and to the west side of the Romanella property, and then turning south towards the rear of the plaza. Persons working at the AutoZone and stereo store have limited visibility of the area to the south. There are no windows on the southern end of the building, they only see the area from the loading dock when the door is open or when they are outside the building.
If no cars were parked along the southern side of the building, the loading dock could be accessed by a truck backing into the lot from Granite Street.
While an easement is shown in the recorded deeds, Exhibits 1 and 11, the boundary area between the two parties and the location of the easement is not easy to discern from the property itself. There are no boundary markers or obvious boundaries. In May 2010, a surveyor sprayed dotted lines on the lot.
 B. Presentation of Witnesses
As the facts of this case are largely undisputed, there is no need to comment on the credibility of the witnesses at length. Shawn Martin and Rita Martin, the operators of *Page 5 
the liquor store and owners of Butterfly, were clear, direct, credible and consistent. Charles Sposato, a principal of Romanella, was anxious to respond to questions, and cooperative on cross-examination. He was clear about limiting the extent of his knowledge throughout the questioning. Craig Jackson, an operator of the Auto Audio store, was well spoken, familiar with the issues in advance, and limited his answers to areas of his knowledge. James Romanella, another owner of the Romanella entity, was more soft spoken and limited his short responses. The Court had no reason to question the credibility of any of the witnesses.
 C. Analysis 1. Easement by Prescription
Plaintiffs first claimed a larger interest in the Romanella property by asserting an easement by prescription. "One who claims an easement by prescription bears the burden of establishing actual, open, notorious, hostile, and continuous use under a claim of right for at least ten years." Hilley v. Lawrence,972 A.2d 643 (R.I. 2009); Stone v. Green Island CivicAssociation, Inc., 786 A.2d 387, 389 (R.I. 2001). These elements must be established "by clear and satisfactory evidence."Id. at 389-390. The Stone court also declared "[p]arties seeking to establish an easement by prescription must show some affirmative act that puts the property owner on notice that their occupancy was hostile to the owner and that they were claiming the property as their own." Stone, at 389 (citation omitted). InReitsma v. Pascoag Reservoir and Dam LLC.,774 A.2d 826 (R.I. 2001) the Court considered the amount of hostility required to establish a claim of right, declaring *Page 6 
 No particular act to establish an intention to claim ownership is required. It is sufficient if one goes upon the land openly and uses it adversely to the true owner, the true owner being charged with knowledge of what is done openly on his land. . . .
 In other words, a claim of right to own or use property will arise by implication through objective acts of ownership that are adverse to the true owner's rights, one of which is to exclude or prevent such use. When confronted with such an open, unsolicited, and long-continued use of the property, the true owner must affirmatively communicate either objection or permission to stop the statutory prescription from running. Mere acquiescence or silence, however, in the face of uses that are inconsistent with the true owner's property rights does not constitute permission. Reitsma at 831-832 (citations and quotations deleted, emphasis supplied).
Here, the disputed area is a commercial lot, freely used by the tenants of all of the parties. It is also used by the tenants' customers while accessing the stores to the north and the south. This, in and of itself, is consistent with Romanella's rights and use of its own property. The use of this property was not sufficiently adverse to Romanella's rights so as to exclude or prevent Romanella's use of its property. Rather, it was entirely consistent with Romanella's use.
There were only two periods where the use of the disputed area by Butterfly's tenants was inconsistent with Romanella's own use: When the trucks caused damage to Romanella's property and when the Christmas tree lot was in use. On each such occasion Romanella's reaction was clear and decisive: Mr. Sposato informed the truck drivers that they had done damage and they must pay for repair. Mr. Sposato directly confronted those who questioned the positioning of the Christmas tree lot. When the positioning of the tree lot was questioned by a Butterfly tenant, Mr. Sposato asserted ownership of the area and suggested the tenants should use smaller delivery trucks. The construction of *Page 7 
the Christmas tree lot not only stopped the Butterfly tenants from using the brown and green routes, it ejected several of the Butterfly tenants' employees from parking in the spaces to the south of the Butterfly building. Mr. Sposato's actions cannot be construed as mere acquiescence. Instead, Romanella was clearly asserting its established property rights as defined by the deed and easement documents. The facts of this case simply do not allow any inference of hostile use or use under a claim of right. Moreover, the use never continued for a period of ten years.
For an easement by prescription, hostility must be shown. Hostility is not required as a communicated emotion, but an action inconsistent with the claims of others. Taffinder v. Thomas,119 R.I. 545, 523 (1977). Here, there is no hostility in any sense. The property was simply being used by delivery trucks and customers, a use totally consistent with the already existing use of the retail stores present in both lots.
Moreover, Butterfly already had an easement for the loading dock. The access area to the loading dock was strictly limited under the terms of the easement. Romanella's generosity in allowing customers and delivery trucks to use the area reasonably does not in and of itself infer hostile use of the property so as to create an easement by prescription. Although Butterfly claimed the snow plowing and seal coating represented hostility, the actions were entirely consistent with Romanella's use. There is insufficient evidence for the Court to conclude which areas of the disputed property were regularly snow plowed or paved by either party. *Page 8 
 2. Adverse Possession
Plaintiffs' second claim is that they have adverse possession rights over the disputed area. A recent Supreme Court case provides this Court with considerable guidance in applying the thorny elements of adverse possession to the case at bar. In Cahill v.Morgan, 11 A.3d 82 (R.I. 2011), the High Court first reviewed the time-honored elements of adverse possession:
 In Rhode Island, obtaining title by adverse possession requires actual open, notorious, hostile, continuous, and exclusive use of property under a claim of right for at least a period of ten years. Corrigan v. Nanjan, 950 A.2d 1179, 1179 (R.I. 2008) (mem.); see also § 34-7-1. "The party who asserts that adverse possession has occurred must establish the required elements by strict proof, that is, proof by clear and convincing evidence." Corrigan, 950 A.2d at 1179 (citing Tavares v. Beck, 814 A.2d 346, 350 (R.I. 2003)); see also Carnevale v. Dupee, 853 A.2d 1197, 1199 (R.I. 2004). Cahill v. Morrow, 11 A.3d 82, 88 (R.I. 2011), footnote deleted.
In Cahill, a neighbor asserted adverse possession even though she asked to purchase the property during the statutory ten year period. "This manifestation from Cahill interrupted the accrual of her claim." Cahill, 11 A.3d at 90. As the Court continued on page 10 of the Decision:
 Rather, Cahill was openly and objectively manifesting direct evidence that George Morrow was the true owner of lot 19 and her interest in the property was subservient to his. This communication negates the requisite claim of right that the doctrine of adverse possession requires and interrupts the accrual of Cahill's claim. See Heggen, 144 N.W.2d at 242 ("[T]he recognition of the owner's title by an adverse claimant interrupts the adverse possession."); see also Bowen, 997 A.2d at 579 (`"Such an acknowledgment of the owner's title terminates the running of the statutory period, and any subsequent adverse use starts the clock anew.'"). *Page 9 
Cahill v. Morrow, 11 A.3d 82, 93 (R.I. 2011). Justice Indeglia, writing for the majority, reasoned that Ms. Cahill's plight was distinguishable from prior Rhode Island cases as "there was no pre-existing, ongoing dispute between Cahill and Morrow when Cahill sent Morrow the letter [seeking to purchase the property"].
No hostility was demonstrated by Butterfly. Butterfly and Romano already created an easement allowing for limited access to the loading dock. They abided by the easement terms. Butterfly and Romano leased their properties to tenants who operated active retail stores. Access to the properties by tenants, customers and delivery trucks in this commercial sense was reasonable, not hostile. Any claim of adverse possession is therefore defeated.
Furthermore, one who attempts to establish adverse possession in Rhode Island must establish that they exclusively use the property for the statutory period of ten years. Butterfly never attempted to prove its use was exclusive — it was not.
Butterfly alleges that it is entitled to a judgment for adverse possession of the easement area, to the exclusion of Romanella. Butterfly's memorandum at unnumbered pages 23 and 24 references adverse possession by cotenants. These cases are worthy of review in more complete form:
 Ordinarily the possession of land by one cotenant inures to the benefit of the other cotenants and is presumably not adverse to their correlative rights to its possession. By the weight of authority, however, one cotenant may hold and obtain title to the whole land by operation of the law of adverse possession. But, in such cases, stronger evidence is required to prove such adverse possession than in similar claims by strangers to the title. 1 Cyc. 1072-1074. It seems settled that, to prove adverse possession against other cotenants, the evidence must establish actual ouster or disseisin, and compliance otherwise with the statutory *Page 10 
requirements. This does not mean, however, that a physical ouster, as by eviction, must take place. The authorities here and elsewhere hold that the equivalent of an ouster or disseisin may be established where the evidence clearly shows one tenant's conveyance by warranty deed and an entry thereunder by the grantee, or where the possession of one tenant is so overt and notorious and so wholly inconsistent with the rights of the other cotenants to its possession as to amount to notice of definite denial of such rights. City of Providence v. Divine, 58 R.I. 204, 214, 192 A. 212, 214 (R.I. 1937) (citations omitted).
 And the law presumes that when the character of the occupation of land is not initially adverse, it continues to be of the same nature in the absence of some conduct indicating a change. If one cotenant seeks to sever his relationship as a cotenant of the others and render his possession adverse, he must clearly show that his possession is so overt, notorious, and so wholly inconsistent with the other cotenants' rights as to be equivalent to an ouster between a landlord and a tenant. The adverse claimant's action must be such so as to put the other cotenants on notice ? either actual or constructive ? of the denial of their rights. Stronger evidence is required to establish the adverse possession of a cotenant than the adverse possession of a stranger. To sever their relationship as cotenants and render their possession adverse, the Spanglers had to show acts of possession which were not only inconsistent but in exclusion of the continuing rights of the other cotenants. The plaintiffs have failed to bring themselves within this rule. Spangler v. Schaus, 106 R.I. 795, 804-05 (R.I. 1970) (citation omitted).
The Spanglers did not take a significant overt action so as to exclude the continuing rights of their co-owners, and neither did Butterfly. Butterfly alleges that it excluded Romanella from the lot by employees parking cars in the spaces of the retail stores during the business day. Butterfly also plowed and striped some of the parked spaces. This does not constitute a complete ouster or exclusiveness. Its actions were simply not overt, notorious or inconsistent with Romanella's rights as to amount to notice of exclusivity or even adversity. *Page 11 
Pursuant to Cahill v. Morrow, 11 A.3d 82, 88 (R.I. 2011), these facts are not sufficient to establish exclusive hostile or notorious actions to justify an award of adverse possession.
 3. Trespass
In the Counterclaim, Romanella seeks a permanent injunction preventing the plaintiffs from trespassing onto its land.
A trespasser is one who "intentionally and without the consent or privilege enters onto another's property." Ferreira v.Strack, 652 A.2d 965, 969 (R.I. 1995). To recover in trespass, Romanella must establish that the plaintiffs intentionally entered onto Romano's property and that Romanella had rightful possession of the property. Berberian v. Avery,99 R.I. 77 205 A.2d 579 (R.I. 1964). The facts here reveal that a vast number of people regularly enter onto the disputed area, including some of Romanella's tenants, and Butterfly's tenants. Customers and distributors also enter onto the retail property. However, it was not shown, to the satisfaction of the Court, that Butterfly intentionally entered onto the Romanella parcel. While several of the customers of the tenants of Butterfly enter onto the Romanella property, there is no evidence that the plaintiffs authorized this, encouraged this or could control this.
While an owner may not be the only party to a trespass action (seeHeroux v. Katt, 76 R.I. 122 (R.I. 1949), the moving party must name the trespasser clearly, so that an injunction may properly issue against the party which trespasses. For issuance of an injunction, a moving party must show
 (1) whether the moving party established a reasonable likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm without the requested *Page 12 
injunctive relief; (3) whether the balance of the equities, including the public interest, weighed in favor of the moving party; and (4) whether the issuance of a preliminary injunction served to preserve the status quo ante. Allaire v. Fease 824 A.2d 454, 457 (R.I. 2003).
As Butterfly itself is not trespassing and has not yet been shown to be encouraging a trespass, there is no showing of success on the merits against it. A balancing of the equities does not favor enjoining a party who has been demonstrated as a trespasser. The Court is not convinced that a court order is necessary to stop future harm, now that the parties' rights have been adjudicated herein.
Accordingly, Romanella should seek to clear its property of trespassers in the first instance, before seeking injunctive relief from the Court. Romanella's request for injunction is therefore denied, without prejudice.
 CONCLUSION
For the reasons set forth, judgment shall enter in favor of James Romanella Sons, Inc. and against the plaintiffs on all of the counts in the Complaint.[2] No injunction shall be issued in favor of the plaintiffs. On the counterclaim, judgment shall enter for the plaintiffs against James Romanella Sons, Inc., and the request for an injunction is denied without prejudice.
[1] During the trial, AutoZone was also referred to as ADAP.
[2] There are five counts in the Amended Complaint. As the plaintiffs only addressed two counts (adverse possession and easement by prescription), it apparently only presses those two counts now. Clearly, the facts found would not justify an easement by necessity or by acquiescence. *Page 1